[No. 11515.   In Bank. — December 15, 1888.]

# WILLIAM T. COLEMAN, APPELLANT, *v.* JAMES COMMINS ET AL., RESPONDENTS.

EJECTMENT — CROSS-COMPLAINT BY MORTGAGEE IN POSSESSION — PAYMENT. — A cross-complaint by the defendant in an action of ejectment, asking for a foreclosure and sale of a mortgage executed to him by the plaintiff, and that he be permitted to retain possession until the mortgage is satisfied, cannot be sustained if it appears that the mortgage debt has been paid under the terms of an assignment of the mortgage to the plaintiff, by way of mortgage to secure advances to the defendant from the plaintiff.

MORTGAGE — ASSIGNMENT TO MORTGAGOR BY WAY OF MORTGAGE — PAYMENT — INTEREST — STATUTE OF LIMITATIONS. — When a mortgage is assigned to the mortgagor by way of mortgage, to secure advances to the

mortgagee, and the assignment provides that interest on the sums advanced by the mortgagor shall be payable monthly, and also provides that the principal and interest shall be applied in payment due or to grow due upon the mortgage, the interest which accrued more than four years before the commencement of an action in which it is sought to foreclose the mortgage is not barred by the statute of limitations, but is to be applied as a payment or offset upon the mortgage. A monthly demand of the interest and foreclosure, or personal action to collect it, is not required by such contract of assignment.

CONSTRUCTION OF CONTRACT—INTENTION OF PARTIES—REPUGNANT PROVISIONS.—The construction of a contract should be reasonable. The intent of the parties must be found by a fair interpretation of all the terms of the contract, and if any particular phrase or clause be repugnant to or inconsistent with what appears to be the object or intention of the parties as thus gathered, it should be rejected.

INTEREST—USURY.—The illegality of usury is wholly a creature of legislation, and in this state nothing has been prescribed by the legislature to relieve parties from contracts providing for exorbitant rates of interest.

ID.—COUNTERCLAIM—PAYMENT OF MORTGAGE—CONTINGENT CONTRACT.—When money advanced to a mortgagee by the mortgagor, with interest thereon, is to be applied in payment of the mortgage, if a survey of the mortgaged property is confirmed, the interest ceases in that event, when the advances with interest amount to the face of the mortgage, and no further interest can be counter-claimed in a proceeding to foreclose the mortgage. The fact that the sums advanced are to be returned with interest if a survey of the mortgaged property should be rejected, is immaterial.

APPEAL from a judgment of the Superior Court of Marin County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Hepburn Wilkins,* for Appellant.

Where a contract provides that interest is payable monthly upon the principal sum, the interest is a mere incident to the principal obligation, and the statute of limitations does not commence to run against the interest until the principal is due. (*Meyer* v. *Porter,* 65 Cal. 67, 71; *Grafton Bank* v. *Doe,* 19 Vt. 463; 47 Am. Dec. 697; *Ferry* v. *Ferry,* 2 Cush. 92; *English* v. *Watkins,* 4 Ark. 201; *Henderson* v. *Hamilton,* 1 Hall, 314; *Howe* v. *Bradley,* 19 Me. 36; *Burton* v. *Town of Koshkonong,* 11 Rep. 87.)

*Nygh, Fairweather & Durst,* for Respondent.

The interest is barred by the statute. (*Dearborn* v. *Parks,* 5 Greenl. 86; 17 Am. Dec. 206; *Smith* v. *Purdy,* 1 Root, 29; *Clark* v. *Iowa City,* 20 Wall. 583; *Amy* v. *Dubuque,* 98 U. S. 470; *Hershey* v. *Hershey,* 18 Iowa, 24; *Herries* v. *Jamieson,* 5 Term Rep. 553; *Howard* v. *Farley,* 18 Abb. Rep. 367; *Cooley* v. *Rose,* 3 Mass. 221; *Greenleaf* v. *Kellogg,* 2 Mass. 568.) Where the interest is stipulated for in the contract, it is an independent debt. (*King* v. *Phillips,* 95 N. C. 247; 59 Am. Rep. 238; *Stone* v. *Bennett,* 8 Mo. 43; *People* v. *County,* 5 Cow. 331; *Hodgden* v. *Hodgden,* 2 N. H. 69; *Fake* v. *Eddy's Ex'rs,* 15 Wend. 76; *Sparhawk* v. *Wills,* 6 Gray, 163; *Dalaney* v. *Payne,* 101 Ill. 330.)

PATERSON, J.—Ejectment. The land in controversy was conveyed by the defendant to the plaintiff on February 17, 1872. It is a portion of the Mexican grant commonly known as the Corte Madera. A survey of the rancho had been made, but was not confirmed until the first day of March, 1885. The purchase price to be paid by plaintiff to defendant was sixteen thousand dollars, seven thousand five hundred dollars of which was paid at the time the deed passed, and plaintiff gave to defendant a mortgage for the balance,—eight thousand five hundred dollars. The mortgage, which was executed by both parties, provided that the money should be payable "upon final confirmation of the survey, but that in no event should the money be due before November 1, 1872." It further provided that Commins should remain in possession until confirmation, in lieu of interest upon the eight thousand five hundred dollars secured. On December 18, 1872, Commins received from Coleman the sum of seven hundred dollars, and, to secure its repayment, if the survey should not be confirmed, executed to the latter an assignment of the mortgage "by way of mortgage." On May 12, 1873, Coleman made another

advance of $250, and received from Commins an agreement that the money was taken on the same terms and conditions as those named in the assignment of the mortgage, "except that the interest on this sum shall be reckoned only from the present date." On January 5, 1874, Coleman advanced the further sum of five hundred dollars, and executed an instrument similar to the one last referred to. It provided, however, that the rate of interest should "be two per cent per month from and after the fifth day of January, 1874, payable monthly in gold coin, and if not paid at the end of each month, shall be added to and become part of the principal, and draw the same rate of interest as the principal sum."

No part of the principal sums thus advanced, or interest thereon, was ever paid by defendant. At the time of final confirmation of the survey, March 1, 1885, the principal and interest of the sums advanced by Coleman amounted to more than eight thousand five hundred dollars,—the amount named in the mortgage of plaintiff to defendant.

This action was commenced on September 11, 1885. The complaint contains the usual allegations in ejectment. The defendant filed a cross-complaint, claiming that the original mortgage had not been paid, and asking for a foreclosure and sale, and for a decree that he might be permitted to retain possession of the property until the mortgage was satisfied. The plaintiff filed an answer thereto, claiming that the principal and interest of his loans to Commins amounted to more than the money due upon his mortgage to Commins, and that this fact entitled him, under the terms of the assignment, to the possession of the land; and, as a counterclaim, that he was entitled to $1,781, the excess of the amount of principal and interest advanced to defendant over the eight thousand five hundred dollars, amount of the mortgage debt.

The court held that all interest on the advances made,

—$700, $500, and $250,—which had accrued more than four years prior to the commencement of the action, was barred. The amount of the principal sums named and interest thereon not barred being $3,175.91, judgment was rendered in favor of defendant for the difference between that sum and $8,500,—$5,324.09,—and for a foreclosure sale as prayed for.

We are of opinion that the court erred in its construction of the contract of assignment. It is true, the phrase "payable monthly" is used in one place in the contract with reference to the payment of the interest on the seven hundred dollars "advanced and paid" by Coleman, but the provisions of the contract, when all read and construed together, make it clear, we think, that the parties intended the advances made by Coleman, with the interest due thereon at the time when he could be called upon by Commins to pay the mortgage, to be taken as an offset to or payment of the eight thousand five hundred dollars, to the extent of the amount of said advances, and interest thereon then due. It was impossible to tell at the time of the execution of the deed and the mortgage when the survey would be confirmed, or whether it would be confirmed at all. It was provided in the mortgage that, if confirmed, the eight-thousand-five-hundred-dollar mortgage debt would be due and payable; if rejected, that the contract might be rescinded by Coleman, and in that case Commins agreed "to refund and repay to said party of the first part in United States gold coin all sums of money paid to him on account of the purchase of said mortgaged lands and premises, with interest thereon in like gold coin, at the rate of one per cent *from date of payment until repayment of same.*" At that time, therefore, it is clear the parties intended to wait until final action of the land department before adjusting their accounts as to either principal sums or interest thereon. This intention seems to have been carried through the subsequent agreements.

In the contract of assignment executed by both parties, December 18, 1872, it is provided that "whereas, the said James Commins is desirous that said William T. Coleman shall advance to him, said Commins, the sum of seven hundred dollars in gold coin, part of the money secured to be paid in and by said indenture of mortgage, to which mortgage reference is hereby made for a more particular description of said lands, *and the terms and conditions of the payment, and refunding of the purchase price of said land, as the case may be.* Now, this indenture . . . . witnesseth that, in consideration of the sum of seven hundred dollars in gold coin advanced and paid by said party of the second part to said party of the first part, . . . . said party of the first part . . . . does hereby assign, transfer, and set over unto said party of the second part . . . . said indenture of mortgage . . . . by way of mortgage to secure the repayment of said sum of seven hundred dollars in United States gold coin, *with interest thereon from the date hereof until final consummation of said purchase, or until said party of the first part hereto repay and fully refund to said party of the second part hereto, in case he rescind said purchase, as provided in said mortgage, at the rate of one and one half per cent per month, . . . . payable monthly.* It is distinctly understood . . . . that should the sale and purchase . . . . be consummated at the time and in the manner in said indenture of mortgage expressed, that then and in that case the sum of seven hundred dollars, *with interest thereon as aforesaid secured hereby, shall be applied and taken to be in part payment of the amount of money due or to grow due upon said indenture of mortgage first mentioned;* but if the party of the second part should . . . . rescind the purchase of the lands, . . . . said sum of seven hundred dollars, *together with the interest thereon as aforesaid,* shall be refunded and repaid by said party of the first part."

In this instrument, the provision that the interest is "payable monthly" seems to be controlled by other pro-

visions, which show that the object of the assignment was to secure to Coleman the repayment of the seven hundred dollars advanced, with interest thereon from the date of the assignment until the maturity of the mortgage, in case the sale should be rescinded; and in case it was not rescinded, to use the seven hundred dollars and interest then due as an offset to the eight-thousand-five-hundred-dollar mortgage debt. Upon a reasonable construction of the contract, we do not think it can be said that the parties contemplated that there should be a monthly demand of $10.50 interest, and in case it should not be paid, a foreclosure or personal action to collect it. The intent of the parties must be found in a fair interpretation of all the terms of the contract, and if any particular phrase or clause be repugnant to or inconsistent with what appears to be the object and intention of the parties, as gathered from a consideration of all the provisions of the contract, it should be rejected.

It is claimed by respondent that the rates of interest on the several sums advanced are exorbitant and oppressive. They certainly seem very high, but the statute in force at the time the contract was made read as follows: "Sec. 2. Parties may agree in writing for the payment of any rate of interest whatever on money due or to become due, and it shall be allowed according to the terms thereof until the entry of judgment thereon." The illegality of usury is wholly the creature of legislation, and in this state nothing has been prescribed by the legislature to relieve parties from contracts providing for exorbitant rates of interest.

The plaintiff is not entitled to anything under his counterclaim. The amounts advanced by him, together with the interest thereon, were to be applied in *payment* of his eight-thousand-five-hundred-dollar mortgage debt, if the survey should be confirmed. It was only in case the survey was rejected, and the contract rescinded by him, that the several amounts advanced by him were

to be returned, with interest thereon. The survey was confirmed, there was no rescission, and there is nothing in the contract, or in law or equity, which entitles the plaintiff to recoup. When the sums advanced, with interest thereon, amounted to eight thousand five hundred dollars, the debt was paid, and interest ceased.

Judgment and order reversed, and cause remanded, with direction to the court below to enter judgment in favor of the plaintiff for the possession of the land and costs of the action.

SEARLS, C. J., McFARLAND, J., SHARPSTEIN, J., and THORNTON, J., concurred.

Rehearing denied.