## PATTILLO *v.* ALEXANDER.

1. In a suit upon a contract made and to be executed in the State of Tennessee, in the absence of any evidence to the contrary, this court will presume that the rules of the common law prevail there.
2. According to the rules of the common law, the indorser of a promissory note is entitled to have the same duly presented for payment, and of a failure or refusal to pay he is entitled to notice; and a failure of the holder to present for payment, or to give notice of non-payment, discharges the indorser from liability.
3. Where upon a promissory note executed and payable in the State of Tennessee, to a named payee or order, and containing no stipulation for the payment of attorney's fees, suit was brought by a holder against the payee, who had indorsed upon the note the following undertaking, signed by him: "I guarantee attorney's fees up to ten per cent. if this note has to be collected by law, on [and?] its prompt payment," there being no other indorsement of the paper by the payee: *Held*, that by the terms of this agreement, it having been made for the purpose and in the course of negotiation, the payee became and was an indorser thereof and liable as such, with a superadded liability for such reasonable sums, not exceeding ten per cent., as might be expended for attorney's fees by the holder in the collection of the note. *Held* further, that in order to bind the payee for the payment of the note, it was incumbent upon the plaintiff to prove presentment and notice of non-payment. *Held* further, that in order to charge the payee with the payment of attorney's fees, it must appear that in the effort to recover from the maker the sums due on the note, the holder had

incurred a liability, or had expended for attorney's fees the amount sought to be recovered from the payee, not exceeding ten per cent. of the debt due.

April 1, 1895.  Brought forward from the last term.

Action on note.  Before Judge MILNER.  Bartow superior court.  January term, 1894.

JOHN W. AKIN, for plaintiff in error.

JAMES B. CONYERS and GRAHAM T. HOLTZCLAW, *contra.*

ATKINSON, Justice.

1. Except as controlling those matters which are so essentially local in their nature as to be at all times the subject of special statutory regulation, and which by reason of this peculiar characteristic are embraced within the term " local idiosyncrasies" of the law, the rules of the common law have been adopted in most of the States of the Union, and the property rights of the citizens of such States have been adjusted with reference to, and the laws governing the same administered in accordance with, its doctrines.  This is the reason of the rule, that as to such matters concerning which there is no such recognized variance between the laws of another State, and that law which is the common source of all our jurisprudence, as will afford to the courts of different States a basis for judicial cognizance of such difference, the courts of one State will presume, in the construction of contracts executed and to be performed in another, that the rules of the common law prevail there, and will determine the rights of litigants accordingly.  This is a salutary rule, and one which has been adopted in this State (see *Woodruff & Co.* v. *Saul,* 70 *Ga.* 271), and is one of such general acceptance as to be recognized by the courts of last resort in most of the States of the Union. Wharton on Evidence, vol. 1, section 314 *et seq.*; 9 Wis. 328; 1 Cowen, 103; 1 Seld. 447; 8 Minn. 13; 10 Ark. 169; 30 Ark. 469; 2 Colo. 596; 12 Ind. 102; 56 Ala. 299.

2. The contract of the indorser is not that he will at

all events pay a bill which he has by the act of his indorsement transferred to another, but his agreement by the common law is to pay upon demand by the holder upon the drawer and notice of non-payment or of dishonor to him. The rule which requires notice to the indorser, of non-payment, as a prerequisite to his liability, is based upon the implied undertaking, of the indorsee that he will use due diligence in the prosecution of his demand against the maker, that he will present the paper for payment immediately upon its maturity, and will not by his negligence expose the indorser to a hazard of loss against which he, in case of notice of dishonor, might be able otherwise to protect himself; and if he fail to perform this duty to give timely notice of non-payment, the law presumes injury to the indorser and discharges him. A formal protest for non-payment, though now in this and many other States required by statute in certain cases, was not necessary by the law merchant, save only as to foreign bills of exchange; and as the present case involves only the application of the rules of the law merchant to the contract now under consideration, formal protest for non-payment was not necessary here in order to bind the indorser. Protest was deemed necessary only as a certain and simple means of proving presentment of the paper and the fact that the same was dishonored, and the rule requiring it was applicable only to foreign bills of exchange; and, as we have seen, except where required by statute, this formality is not requisite in order to bind an indorser. Notice to him of non-payment, however, is nevertheless indispensable, as that is one of the conditions upon which he becomes liable upon his contract of indorsement. The time within which such notice was to be given was not fixed by any unvarying rule under the common law. It was only requisite that demand be made immediately upon maturity of the paper, and that

notice of non-payment should be given within a reasonable time; and a reasonable time would depend to a great extent upon the means of transportation and the facilities existing at the point where the paper was presented for payment, for the transmission of that class of intelligence. In most of the States of the Union, by adjudged cases, where no statute prescribes the time within which notice shall be given, the term "reasonable time" has been defined with such certainty and precision as to afford almost a fixed rule upon that subject. This case being referable to common law principles for its solution, as to whether or not this indorser received notice at all, and if so, whether he received it within a reasonable time, taking into consideration the means of communication between the places where the paper was presented for payment and the residence of the indorser, would, if at all doubtful, present questions of fact for a jury—it being borne in mind that notice itself was indispensable to his liability. Chitty on Bills, p. *443; Daniel on Neg. Inst. sections 970, 971, 1035 *et seq.* But where the matter of fact, in the very nature of things, is not doubtful, the court may adjudge as a matter of law that in the particular case the notice is not given within such a time as legally to impose a liability upon the indorser. Of course, no rule can be framed by which it can be stated as a matter of law within what time generally a notice of non-payment must be given in order to bind an indorser, for that would depend upon the particular facts of each case; but where the facts are undisputed, and the time allowed to elapse is manifestly unreasonable, it may be pronounced with perfect confidence that in a certain case the notice was not timely given. The question then becomes one of law and not of fact, and the court may and should pronounce thereon without submitting it to a jury. 1 Fla. 125; 3 Wend. 75; 1 Cowen, 397, 1 Term Reports, 167; 2 Caines, 369. In

the present case, according to the evidence in the record, some four months elapsed after the note became due before it was presented for payment, and a half a month more elapsed before notice of non-payment was given. Surely in this day of fast mails, instant communication by telegraph and other equally effective means for transmitting intelligence, it can be with certainty said that a delay of four and a half months in giving notice of non-payment upon a demand which should have been made, both maker and indorser living in populous cities between which there is daily communication by telegraph and by mail, with a distance of not more than one hundred miles intervening, is unreasonable as a matter of law. The trial judge should have so directed the jury, and if they, though not so instructed, found to the contrary, the verdict was wrong.

3. The note sued upon in this case was executed in the State of Tennessee, and was made payable to the order of the present defendant, at the city of Chattanooga, in said State. Upon it the defendant made the following indorsement: "I guarantee attorney's fees up to ten per cent. if this note has to be collected by law, on [and?] its prompt payment"; signed "R. M. Pattillo." Afterwards suit was brought by the plaintiff, as the holder, upon this note, against the payee alone upon this indorsement as a contract of guaranty, and the defendant answered that if liable at all, his liability was that of an indorser, and not as a guarantor merely, and the holder having failed to demand payment promptly at maturity and give him notice of dishonor, he was therefore discharged. The court ruled the contract of the payee not to be one of indorsement, and a verdict was rendered for the plaintiff. In order to determine the liability of the payee to the holder, he being the only person against whom this action is brought, it is necessary to inquire what is his true relation to this paper,

according to the understanding and intention of the
parties at the time. The note passed into the hands of the
plaintiff, who was the immediate indorsee. In arriving
at the intention of the parties, it is competent, neces-
sary and proper to inquire somewhat into the history of
the transaction out of which this indorsement of this
paper grew. The original maker had delivered the pa-
per to the payee, and by the payee it had been negotia-
ted, or was in process of negotiation, to the present
holder. It was necessary, in order to invest the holder
of this paper with such a title thereto as would enable
him to demand its payment of the maker, that there
should be an assignment of the payee's interest to the
holder. This might have been accomplished by an ordi-
nary assignment, without liability over upon account of
the paper to the holder at all, or it might have been accom-
plished by an indorsement by the payee, either in blank
or to this holder. A simple indorsement by the payee
of his name upon the paper would have served the double
purpose both of transferring the title to the holder and
of charging the payee with the obligation to pay in the
event the maker, upon presentation, declined to honor
it. Such an indorsement would have served to have fixed
absolutely the liability of the indorser for the amount of
the note. In the contemplated contract and plan of
negotiation there was another element of risk not pro-
vided for in the note and against which the purchaser
desired to protect himself, and there was, therefore, in
contemplation of the parties, a necessity for some guar-
antee beyond the point of mere redemption of the note
in the event it was dishonored. The purchaser did not
desire to incur the expense of a collection by law, and
the note itself containing no stipulation for the pay-
ment of attorney's fees, in order to protect the holder
against possible expense on that account, it was neces-
sary in some way to charge the indorser with the super-

added obligation to pay attorney's fees, and hence the form of indorsement employed by them. Negotiation and transfer of title was as much the object designed to be accomplished by the parties to this transaction as was the guarantee of ultimate redemption by the maker. To accomplish the fact of negotiation and to effectuate this primary purpose, it was necessary to treat this entry upon the back of this note as an indorsement; otherwise there was nothing which gave to the holder the right to demand payment of the maker. If, independently of this indorsement, there had been another simple indorsement by the payee upon the back of this paper, this simple indorsement would have had the effect to transfer the title to the paper, and in addition would have bound the payee to the same obligation under which he is now held, save only as to the attorney's fees. And such a condition of affairs might have afforded some ground for treating the indorsement now under consideration as a contract of guaranty only. Treating this indorsement as a guaranty only for the prompt payment of the note at its maturity, it would impose no greater obligation upon the payee than would a simple contract of indorsement; for the effect of a simple contract of indorsement is to transfer the title to the paper, and give in addition an implied guaranty of the solvency of the maker. The form of words employed in making this contract is not specially important, except in so far as it serves to throw light upon the nature of the undertaking upon the part of the payee who signed it. It is the purpose designed to be accomplished and which is legally accomplished by the fact of indorsement, which must at last determine the nature and character of the contract. The effect of an indorsement upon a promissory note in the form employed by the parties to this transaction, made by one not a party to the paper, might be an entirely different thing than when employed by

the payee, who designs to guarantee not only the solvency of the maker, but likewise to transfer the title. In the former case—that is, in the case of a stranger to the paper—such a contract would import nothing more than a contract of guaranty, for the reason that he would have no title which he could transfer, and therefore the only object which he could legally accomplish by making such indorsement would be to guarantee the solvency of the maker. But in the case of the payee, who in the delivery of the paper may have a dual purpose to accomplish, and in a case where, in the course of the negotiation of the paper, the indorsement is a part of the transaction which results in a complete change of ownership, that interpretation is the more natural one which gives to this entry such force as an indorsement as will serve not only to transfer by that act the title, but at the same time guarantee the solvency of the maker, with an enlarged and extended liability resulting from the special guaranty of attorney's fees. Such a construction gives effect to every word contained in the special indorsement, and at the same time gives full expression to the intention of the parties as manifested by the whole history of this transaction. This guaranty of attorney's fees was, as we have seen, necessary, or deemed such by the holder, as the ordinary contract of indorsement (the note itself not stipulating for the payment of attorney's fees) would not bind the payee, in the event of default, to the payment of expenses of collection; whereas, aside from this guaranty, the mere indorsement would otherwise fully bind the payee. Whatever seeming ambiguity may be involved in the terms " on " or " and " its prompt payment, is instantly dispelled upon a careful analysis of the words employed in this special indorsement. The contract of guaranty imposed in this indorsement, by its very terms, whether read " on " or read " and " its prompt payment, commit-

ted the payee only to the payment of attorney's fees, the guaranty being to pay attorney's fees up to ten per cent. if the note had to be collected by law, and its prompt payment. In the mere act of transferring the title, treating this as an indorsement, the payee had already guaranteed the prompt payment of the note at its maturity, and therefore there was nothing upon which the words "on its prompt payment" or "and its prompt payment" could operate save only upon the payment of attorney's fees. It could not have been designed to guarantee attorney's fees up to ten per cent. "if this note has to be collected by law, on its prompt payment"; because if the note were promptly paid according to its tenor, it could not be collected by law, and therefore the words "on (if the doubtful word be so read) its prompt payment," cannot be construed to apply to the prompt payment of the note, for such a construction would impute to the parties a purpose to provide against a contingency which by no possibility could arise; therefore to give effect to the guaranty at all, the word must be read "and," and the effect of this construction is to guarantee the prompt payment of the ten per cent. attorney's fees in the event the note had to be collected by law. The question then arises, does the word "and" as employed operate to extend the contract of guaranty to the note, or is it confined in its operation to the attorney's fees only? The use of the words "and its prompt payment" instead of "on its prompt payment" could not be applied to the note, because such a guaranty would be wholly superfluous; for if in the act of negotiation the payee, aside from the special contract with respect to the prompt payment of the note, binds himself to the prompt payment of the note, it were idle to say that the words "and its prompt payment" were used with reference to the note itself, for, by the act of indorsement, which involves not only the physical act of signing his name but

delivery for the purpose of negotiation, being already bound to the payment of the note and not bound to the prompt payment of attorney's fees, the words "and its prompt payment" must of necessity refer to the payment of attorney's fees and not to the note. The evident object of this guaranty was to embody in the indorsement a feature of liability which would not inhere in the simple contract of indorsement itself; but the fact that the independent guaranty of attorney's fees accompanies the indorsement of the paper, does not in any sense militate against the fact of indorsement. The contract of indorsement is not consummated by the mere signing of one's name upon the back of the paper. This is one of the constituent elements of a contract of indorsement; but in addition to this, there must be a delivery of the paper. The contract consists partly of the written indorsement, partly of the delivery of the bill to the indorsee, and may also consist partly of a mutual understanding with which the delivery was made by the indorser and received by the indorsee. Byles on Bills, 154. Let us test the effect of this paper by another illustration. It will be admitted that title in a chose in action is necessary to authorize the holder to maintain an action thereon against another. Suppose, instead of this being an action against the indorser of this paper to bind him as a guarantor or indorser upon this contract of indorsement, the action had been by the holder (suing in his own name) against the maker of this paper. Suppose the maker had objected to its introduction in evidence, upon the ground that it was made payable to a named payee and had not been by him indorsed so as to vest title in the holder. It would have been competent to establish the contract of indorsement and the consequent assignment of the title of this paper to the holder, by showing the actual signing of the indorsement now under consideration; by showing, in addition thereto,

that this contract was made in the course of the negotiation of this paper, and that in pursuance of its negotiation, under this indorsement, the paper was actually delivered by the payee to the present holder. The fact of delivery would have to be proven by extrinsic testimony. It might be presumed from the possession of the holder, but the purpose for which the delivery was made could likewise be established by parol evidence. There could be little doubt under such circumstances that for the purpose of a transfer of title this indorsement would have been held to be an indorsement by the payee. Upham *v.* Prince, 12 Mass. 14; Blakely *v.* Grant, 6 Mass. 386; Myrich *v.* Hasey, 27 Me. 9. As another illustration, let us suppose that instead of having sued the payee upon this paper as upon a promissory note, the plaintiff had sued him specifically as an indorser thereon, but in the same action with the maker and in the county of the latter's residence, if within this State; and let us suppose that the payee had filed a plea to the jurisdiction, setting up that he was not an indorser upon the paper. It would have been competent for the holder of the paper to have established his liability as an indorser and the consequent jurisdiction of the court, by showing that the payee, being the owner of this paper, made this indorsement in the course of its negotiation for the purpose of passing the title, and in pursuance of this contract delivered the same to the holder. Proof of the purpose for which he signed it and that the delivery was made in order to effectuate the purpose to transfer the title, would bind him as an indorser. The plaintiff in the present case brings this action upon this promissory note and the alleged contract of guaranty, without undertaking to state distinctly how or wherein the payee would be liable to him upon the paper. There is no possible theory upon which, upon the paper itself, the

defendant could be liable to the plaintiff, except upon the theory that this alleged guaranty by the payee was really operative as a contract of indorsement. If the promissory note in question had been delivered in pledge merely as collateral security to a main obligation, and had been by the payee indorsed in the form here under discussion, there would have been great force in the assumption that this was a mere guaranty by the payee of the solvency of the maker of this note; for, if not intending to negotiate it at all, but merely to deliver it in pledge, this guaranty had been made, it would not have had the effect to pass the title, but merely to guarantee the solvency of the maker of the note, and if, as ancillary to a suit for the recovery of the main debt, this action had been brought against this payee as a guarantor, this entry could not be treated as an indorsement of the paper, because the delivery in pledge is entirely consistent with the form of indorsement here employed, and, upon proof that by the act of delivery it was not designed to negotiate the paper, the idea of a design to enter into the technical contract of indorsement would be rebutted. Thus at last we see that the intention of the party, as manifested in the act of delivery, is the real key to the solution of whatever legal difficulties may surround the construction of this contract. This discussion has proceeded, of course, upon the idea that this controversy is at first hand—it is between the original parties to this transaction. The nature of the indorsement may be explained as between these parties by showing the purpose of the delivery. If the controversy had arisen upon a paper which was by its own terms negotiable, or which by subsequent indorsement in blank by the payee had been thus rendered negotiable, and upon such a paper this special indorsement had been entered by a holder other than the payee, and the issue had been thus between such an indorser or

an original payee of a paper negotiable by delivery only, and an innocent third party, different rules would prevail. To negotiation of a paper not by its own terms negotiable, indorsement or assignment is absolutely essential, and a contract of guaranty merely of the solvency of the maker could not amount either to an assignment or indorsement. The payee or a subsequent indorsee alone can enter into the technical contract of indorsement, because they in succession alone have power to transfer or assign the paper; but any person may guarantee the solvency of the maker and be liable as a guarantor. In 90 *Ga.* 307, Chief Justice BLECKLEY uses this significant language, in dealing with a case in which the following indorsement was made upon the note sued upon, by a person other than a party to the contract: " For a consideration not herein named, we guarantee the payment of this claim to the Geiser Mfg. Co." In discussing this, the Chief Justice says : " Had the Geiser Mfg. Co., the payee of these notes, signed a contract upon them with a third person in the terms of that placed thereon by Jones & Toole (who were the third persons making the indorsement), and had afterwards negotiated them to a third person, the Geiser Co. could under our law be sued and made answerable as indorsers." He cites, as authority for this proposition, *Vanzant* v. *Arnold*, 31 *Ga.* 210. In the latter case it was held by this court that, notwithstanding a superadded obligation in some respects similar to the one under consideration in this case, a contract of indorsement was nevertheless complete. It has been questioned somewhat whether the view here presented as to the character of the contract made by this indorsement is not in conflict with the view taken by the Supreme Court of the United States in the case of the Trust Company *v.* National Bank, 101 U. S. 68. It will be seen, upon examination of that case, that the indorsement signed by

the payee was intended as a simple guaranty of the solvency of the maker. It was not the form of indorsement usually employed in the transfer of negotiable paper in strictly commercial transactions, and this guaranty by the payee itself indicates that the Trust Company discounted it, not upon the faith of the credit of the original maker, but upon the faith of the guaranty alone. The form of the contract of guaranty, accompanied by a delivery thereunder, would of itself serve to charge the Trust Company with notice of any defenses the maker might have had, and thus take it out of the rule which protects innocent purchasers without notice against pre-existing defenses. In order for a transfer or assignment to confer upon an indorsee the benefit of this rule, it must be accomplished according to the law merchant—that is, by indorsement. No transfer by any other method accomplishes this result; and the decision now under review is only authority for the proposition that the form of indorsement then under consideration, when employed in the transfer of paper, was not such an indorsement, according to the strict technical significance of that term, as would cut off the defenses of the maker. In that case, the question was, not whether the Trust Company was such an indorsee as to acquire a title to the chose in action, but whether, under the form of indorsement employed, it was such an indorsee as to cut off equitable defense of the maker. So the question in this case is, not whether the contract under consideration is such an indorsement in its strict technical sense as cuts off defenses of the maker, but whether the payee is such an indorser as entitles him to notice. He may be the latter and not the former. We think he falls within the latter class. The mere guaranty of a paper does not involve the idea of negotiation, nor negotiation necessarily the idea of guaranty, unless the contract of assignment be of such a character as to operate

as a guaranty of the solvency of the maker; and the mere fact that the contract of the indorser may contain a stipulation for a guaranty which extends his obligation beyond that of a mere indorser, does not affect his legal relation to the paper.   20 Vt. 499; 18 Hun, 266. A contract in the following form indorsed upon a promissory note, " We guarantee payment of this note, waive demand and notice of non-payment," was held to be an indorsement with an enlarged liability.   31 Iowa, 9.   A guaranty indorsed on a note by the payee thereof may operate as well as an indorsement as a guaranty, and may make the party signing liable as an indorser.  47 Mich. 70; 8 Neb. 10.  As between the original parties, in considering the effect of contracts of guaranty, the court will look to all the surrounding circumstances and will not be necessarily controlled by the use of the word "guarantee" according to its technical acceptation.   We think that the principle that a guaranty indorsed on a note by a third person would amount to a contract of guaranty only, while a similar guaranty indorsed on a note by the payee thereof in the course of and for the purpose of negotiation constitutes an indorsement, is sustained by the principle decided in the *Geiser* case, *supra,* and likewise in 12 Metc. 452.   In the case of Prosser *v.* LuQueer, 4 Hill, 420, Chancellor Walworth, in the New York Court of Appeals, having under review an indorsement upon a promissory note in the following words, "For value received I guarantee the payment of the within note and waive notice of non-payment," held that such guarantee amounted to an indorsement, and that under a statute authorizing indorsers and makers to be sued in the same action, the action was properly brought against the guarantor as an indorser.   In defining the nature of this contract, he uses this language: "But a general guarantee like this, upon a note payable to bearer, is in law a general indorsement of the note, with a waiver

of the condition precedent of a notice of non-payment by the drawers. It is true that in the present case the note was not payable to bearer, but there is a stronger reason why the indorsement in the present case should be construed to be a regular contract of indorsement in a strict commercial sense, inasmuch as, the paper not being negotiable by delivery alone, an indorsement must have been made by the payee in order to transfer the title. In Buck *v.* Davenport Savings Bank, 26 American State Reports, 392, the following words were written upon the back of a negotiable note and signed by the payee: "Demand, notice and protest waived, and payment guaranteed." This was held to constitute a valid contract of indorsement by the payee, with an enlarged liability. In other words, this decision simply means that without the guaranty of payment and waiver of notice and protest, the liability would have been simply that of an indorser in blank—that is, a liability dependent on demand and notice, and the waiver of notice of non-payment served simply to extend the liability of the indorser by making him liable upon the non-payment of the paper. To the same effect is the 30 American Reports, 811. In the case of Jaffray *v.* Krauss, 29 New York Supp. 987, it was held that, where a married woman was the payee in a promissory note and made and signed thereon the following indorsement, "I hereby charge my separate estate with the payment of this note," this constituted an indorsement only in the strict commercial sense, and though the effect of the indorsement was likewise to charge her separate estate with the ultimate redemption of the paper, it was nevertheless an indorsement, and that she was entitled to notice of non-payment as an indorser in order to bind her and her separate estate to the payment of the paper. It was insisted in that case, inasmuch as the indorsement was made to give an additional credit to the transferee of

the paper, that she became and was thereby only a surety to the maker, and was not therefore entitled to notice as an indorser. It will be observed that she was the payee in this paper. The legal title to the promise of the maker was in her. The indorsement was entered for the purpose of negotiating the paper, and that fact gave her her character as indorser. If, on the contrary, she had not been the payee, and the memoranda had been placed there simply for the purpose of strengthening the credit of the maker, her position then would have been that of a guarantor simply, and she would not have been entitled to notice. The court say: "It is to be observed that the notes were payable to her order, and indorsed by her, as far as the transfer of the notes was concerned, in blank, and she simply made the special provision in order to charge her separate estate. It was clearly intended to be an indorsement by this married woman, and there was no intention upon her part of assuming any other liabilities than any payee, by indorsing a promissory note, usually intends. The payee of a note who indorses the same for the purpose of giving credit to the maker does not thereby become a simple surety, although such indorser knows that the indorsement is asked for for the purpose of giving credit to the maker upon the purchase of goods, and that the note will be used for such purpose. That is the whole transaction as alleged in the complaint, and such allegations in no way alter the rights of the defendant or change the character of her contract." So in the present case, the note sued upon was made payable to the order of the defendant and was indorsed by him, as far as the mere transfer of the note was concerned, in blank, and he simply made a special provision in order to charge himself with liability for attorney's fees upon the happening of the contingency therein provided for. This latter undertaking in no way affected his character

as an indorser. So far as that element of liability is con-
cerned, it remained unchanged and wholly unaffected
by his additional undertaking. Inasmuch, then, as this
contract of indorsement was made for the purpose of
passing title to this promissory note to the present holder
and was made in the course of its negotiation, the payee's
true relation to the paper was that of an indorser; and
in order to bind him to its ultimate redemption, it was
necessary for the plaintiff to have shown notice to him
of its non-payment. The refusal of the court to charge
to the effect that he was entitled to notice as an indorser
of non-payment was error, and a new trial upon that
ground should have been awarded.

In addition to principal and interest, the jury found
for the plaintiff a certain amount of attorney's fees.
Treating this as a contract of guaranty and giving to the
plaintiff the most favorable view that could be taken of
it, this finding was wholly unsupported by the evidence.
The contract of this indorser was conditioned to pay at-
torney's fees, not exceeding ten per cent., which might
be incurred by the holder in the collection of the amount
due on the note by law. The record was wholly silent
as to any expense incurred, or as to the value of the ser-
vice of any attorney; and therefore it was absolutely
necessary, before the plaintiff could recover upon that
account, that he should prove either that he had incurred
a certain amount of expense and that it was reasonable
and within the limit of ten per cent., or that the service
of an attorney for that purpose, within that limit, was
reasonably worth the sum sought to be recovered. There
was no proof of nor offer to prove either, and the finding
of the jury for attorney's fees was therefore wholly un-
supported by the evidence.

We do not deem it necessary or material to inquire
further into the commission of any errors alleged as re-
sulting from rulings by the court upon the trial, inas-

much as the main question determined in this case, to the effect that this defendant was an indorser and entitled to notice, practically disposes of the litigation in his favor.                    *Judgment reversed.*