THOMAS *v.* CLARKSON, administrator.

1. Where a contract which was made and intended to be performed in another State is attempted to be enforced by suit thereon in the courts of this State, the statutes of limitation of Georgia will be applied, rather than those of the other State; and the latter, being irrelevant, will not be admitted in evidence.

2. In a suit in this State on a contract made and intended to be performed in another State, in which the defendant pleads the statute of the other State defining usury and prescribing as a penalty the forfeiture of all interest, and bases an appropriate plea of usury on that statute, in order to maintain the plea it is essential that he prove that the statute was in force at the time of the execution of the contract.

3. The merits of a defense in the courts of this State by a surety on an Alabama contract, setting up a discharge because of failure upon the part of the payee of a promissory note to sue the principal debtor after verbal notice to sue, will be determined by the laws of Alabama. In the absence of proof to the contrary, it will be presumed that, upon the question presented, the common law prevails in that State. In determining that question this court will follow its own rulings upon the common law. The question falls within the ruling of *Howard* v. *Brown*, 3 *Ga.* 531, and it was not erroneous to strike the plea.

4. The evidence being silent as to the law of Alabama upon the subject of interest, it will be presumed that in Alabama the right to interest will be governed by the common law. There being nothing in the com-

mon law against the right to charge interest, and the parties having contracted for the payment of interest which was reasonable in amount and not violative of the policy of our own law, the contract for the payment of interest will be upheld.

5. A plea of partial payment which sets forth neither the time, place, nor amount of payment, is insufficient, and it is not erroneous to sustain a demurrer challenging the sufficiency of the plea.

6. Only one defendant having been served with process, and he alone appearing and defending the action, the verdict in favor of the plaintiff is to be construed as one against this defendant, although he was not specifically named. *Little Rock Cooperage Co.* v. *Hodge,* 112 *Ga.* 521, 527; *Sanders* v. *Etcherson,* 36 *Ga.* 404 (3); *Millhiser* v. *McAllister,* 103 *Ga.* 799; *Baker* v. *Thompson,* 89 *Ga.* 487 (4).

7. The question whether the judgment, which followed the verdict, should have been entered against this defendant by name, can not be considered, since a complaint that a judgment is erroneous or defective is the proper subject-matter of direct exception, and is not ground for a new trial. *Gray* v. *Conyers,* 70 *Ga.* 350 (3); *Baker* v. *Moor,* 84 *Ga.* 186; *Brand* v. *Kennedy,* 71 *Ga.* 707.

8. Under the evidence, the court committed no error in directing a verdict in this case.

Argued January 20,—Decided March 23, 1906.

Complaint. Before Judge Henry. Chattooga superior court. March 29, 1905.

On July 22, 1901, the plaintiff filed suit against W. L. Kinsey and W. L. Thomas, as principal debtors, and Thomas Holcomb as security. W. L. Thomas was personally served, August 19, 1901, but there was no return as to service on the other two. The suit was for principal, interest from date at eight per cent. per annum, and attorney's fees, on two promissory notes for $75 each, under the seals of the alleged makers and surety, all signing as makers, dated December 24, 1880, and due twelve months after date. W. L. Thomas pleaded, that he signed the notes, not as maker, but as surety for the other two and purely for their accommodation, and that he received no benefit therefrom; that at the time, both of the principals were solvent, but afterwards they commenced losing their property and becoming insolvent, and that although the plaintiff was put on notice of those conditions and requested by the defendant to collect the debt from them, he refused and neglected so to do until said Holcomb died and Kinsey moved away; and that because of the great delay, under these circumstances, in bringing suit, he injured the defendant and thereby released him as surety. It was not alleged that any demand for the institution of suit was

made in writing.    The defendant further pleaded as follows: "That he is informed and he believes that some credit or credits should be placed upon said notes, and asks that plaintiff be made to make a full accounting for same not under oath."    Also, that the notes were made and taken in the State of Alabama, and are controlled by the laws of that State; and that under the laws of that State, the time within which suits upon contracts under seal should be brought was limited to ten years after the cause of action matured, and therefore the action was barred; also, that under the statute of Alabama as found in the Code of 1896, which was alleged to be applicable to this transaction, the highest rate of interest authorized to be charged on a loan was eight per cent. per annum, and if anything in excess of that be taken, the lender would lose all the interest; that the consideration of the notes sued on was a loan, the full amount of which was not delivered, two per cent. of the principal of the notes being deducted; and that the notes were therefore usurious and the plaintiff was not entitled to recover interest.    On written motion of the plaintiff, the court struck so much of the plea "as refers to and attempts to set up notice so as to relieve the security," and so much "as refers to and attempts to set up payment or partial payment."    At the trial the plaintiff introduced the notes, which were signed by all three of the parties as makers, and proved that he had incurred the counsel fees claimed, and that the amount claimed was reasonable.    The defendant proved, that all of the parties lived in Alabama at the date of the notes; that the notes were made there, and were an "Alabama consideration and undertaking;" that the consideration was a loan of money, and that the defendant did not receive any benefit thereunder, but that the whole sum, less two per cent. of the principal named in the notes, was paid over to Kinsey; that this two per cent. was retained by Clarkson at the time of making the loan; that Kinsey, the maker, who borrowed the money, moved to Tennesseee about 1892, where he now lives, and that the defendant moved to Georgia about 1883, where he has lived ever since.

There were admitted in evidence the following Alabama statutes from the Code of Alabama, chapter 64, §2626: "The rate of interest upon the loan or forbearance of money, goods, or other things in action is 8 dollars upon one hundred dollars for one year, and at that rate for a greater or less sum, for a longer or shorter time."

§2630: "All contracts for the payment of interest upon the loan or forbearance of goods, money, things in action, or upon any contract whatever at a higher rate than is prescribed in this chapter, are usurious and can not be enforced, either at law or in equity, except as to the principal; and if any interest has been paid, the same must be deducted from the principal, and judgment rendered for the balance only." Defendant offered in evidence Alabama statutes which the court excluded, as follows: Code of Alabama, 1896, chap. 72, art. 1, §2793: "Civil suits must be commenced after the cause of action has accrued within the period prescribed in this chapter, and not afterwards;" and §2795: "Within ten years: 1. Actions founded upon any contract or writing under seal." The court directed a verdict in favor of the plaintiff, for $147 principal, and $282.92 interest thereon to date (March 13, 1905), and $42.99 attorney's fees. The defendant moved for a new trial upon the following grounds: (1, 2) That the verdict is contrary to law and evidence. (3, 4) Because the court erred in striking so much of the defendant's plea as related to relieving the security, and so much of his plea as related to payments upon the notes. (5) Because the court erred in excluding from evidence the statutes of Alabama contained in chapter 72, article 1, sections 2793 and 2795, of the Code of Alabama, relating to the limitations of actions. (6) Because the court erred in directing the jury to find for the plaintiff any interest, because, under the laws of Alabama and under the evidence in the case, there should have been no interest found in favor of the plaintiff, on account of usury having been charged by the plaintiff. (7) Because the verdict fails to set out against whom it was found, and because if the verdict should have been rendered at all against this defendant, it should have been rendered against "W. L. Thomas as security." (8) Because the judgment fails to set out against whom it was rendered, and, if rendered against this defendant, should have been against him as security. At the time of the approval of the grounds of the motion for a new trial, the judge certified that no defendant except W. L. Thomas was sued, or appeared or pleaded, and that the case was tried solely as to W. L. Thomas. The motion for new trial was overruled, and he excepted.

*Wesley Shropshire* and *J. D. Kilpatrick*, for plaintiff in error.

*F. W. Copeland*, contra.

ATKINSON, J. 1. The ruling announced in the first headnote rests on the inherent right of the State to prescribe the remedies to be employed in the enforcement of contracts through the agency of its courts. It is perfectly reasonable that the State of the forum should make its own limitations of time within which suits upon a given class of contracts may be instituted in its courts, or make the rules governing the admissibility or sufficiency of evidence, or prescribe the form of procedure to be employed. It is equally reasonable that when a contract is properly before the courts of a given forum, its validity, form, and effect should be determined in accordance with the laws of the place of the contract. The Code of Georgia of 1895 deals with these subjects on the theory just announced. By it nothing is referable to the laws of other States as to when or how suits on contracts of such States shall be commenced and prosecuted, or how they shall be proved in the courts of this State. Those things are left to fall under the operation of the uniform rule intended to apply to all cases alike, whether the suit be upon a contract of this State or of another State. The code is in harmony with the general law on the subject. In Lawson's Rights, Remedies, and Practice, Vol. 7, §3734, it is said: "The remedy upon a contract, both in substance and form, is regulated by the lex fori and not by the lex loci contractus." And again, in §3738, it is said that "where the limitation merely bars the remedy, the lex fori governs, and the suit must be brought within the time prescribed by the law of the place where the remedy is sought." In this connection see also 22 Am. & Eng. Enc. L. 1385, and cit.; *State of Tennessee* v. *Virgin,* 36 *Ga.* 388; *Montague* v. *Cummings,* 119 *Ga.* 140. By §3765 of the Code of 1895, which is as follows: "Actions upon bonds or other instruments under seal shall be brought within twenty years after the right of action accrues, but no instrument shall be considered under seal unless so recited in the body of the instrument," the rule is fixed which governs the time within which this suit should have been instituted, and hence the statute of Alabama to the same effect (except as to the length of time) was irrelevant and inadmissible. In *Obear* v. *First National Bank,* 97 *Ga.* 587, this court expressly held that "Where a suit upon a written contract executed and to be performed in another State is brought in a court of this State, the question whether or not the plaintiff's right of action is barred, being one

relating exclusively to the remedy, must be determined with reference to the limitation laws of Georgia." Upon the argument of the case at bar, permission was granted to review the case last cited, which has been done, and, upon mature consideration, we are satisfied that the ruling there made is sound in principle and supported by precedent, and should not be overruled.

2. To what is said in the second headnote it is necessary to add but little. By our Civil Code, §8, we look to the laws of Alabama to determine the validity, form, and effect of the contract under consideration. By §2880 of the same code it is provided: "Every contract bears interest according to the law of the place of the contract at the time of the contract, unless upon its face it is apparent that the intention of the parties referred the execution of the contract to another forum; in this case, the law of the forum shall govern." Under these two sections it is clearly referable to the laws of Alabama to determine whether there was usury in the transaction, and, if so, what would be the effect. The plea of usury is personal to the debtor, and, as a general rule, he is not obliged to claim its advantages, though he may do so whenever the facts so authorize. In this instance the defendant elected to claim the benefits, and pleaded the Alabama statute on which he relied. The plea being in avoidance, the burden of proving all the facts essential to its maintenance was on the defendant. In the court below and in this court he based his defense on that statute. We have looked carefully into the record, and the only difficulty we see is that the evidence discloses nothing to show that this statute was of force in Alabama in 1880, the date of the contract. A witness testified that the statute was of force at the time of the trial in 1905, and that it was taken from the Code of Alabama of 1896. There was no other evidence bearing directly or indirectly on the date of the statute. When the statute is once shown to exist, the continuance of its existence may be a matter of presumption until the contrary is proved (*S. A. L. Ry.* v. *Phillips,* 117 *Ga.* 98); but there is no rule, in reason or law, which would justify the inference that the statute contained in the Code of Alabama of 1896 had been of force for fifteen years before the adoption of the code. The statute may have originated in 1896 by the adoption of the code, or it may have been by act of the legislature at an anterior date, more or less remote, but to say that it was of force at any

given anterior date is a matter beyond the scope of presumption. The proof being deficient in this respect, the difficulty before alluded to seems insurmountable, and the defense that the action was barred must fail.   Our code contemplates only "the law of the place of the contract at the time of the contract."

3. "A defense or discharge which is good by the law of the place where the contract is made or to be performed is of equal validity wherever the question may be litigated." 7 Lawson's Rights, Rem. & Pr. §3735.   The rule just expressed is well supported, and is in harmony with the rulings of this court and the provisions of our code.   The defense set up by the defendant, that he, as security, was discharged because of delay upon the part of the payee to sue the principal debtor after request to sue, will be governed by the laws of Alabama.   The weight of authority is that, in the absence of any such proof, it will be presumed that, on the point under consideration, the common law prevails in Alabama. In this connection see *Woodruff* v. *Saul,* 70 *Ga.* 271; *Jones* v. *Rice,* 92 *Ga.* 236; *Pattillo* v. *Alexander,* 96 *Ga.* 60; *Selma etc. Ry. Co.* v. *Lacy,* 43 *Ga.* 461; *Charleston Ry. Co.* v. *Miller,* 113 *Ga.* 15.   Under the plea of the defendant there is no contention whatever that there was in existence any statute in Alabama authorizing the discharge upon the grounds taken.   No such statute was pleaded, nor was any offered in evidence.   It follows, therefore, under the weight of authority as cited, that the question must be determined under the common law.   It is well settled that in such a case as that presented, this court, in passing upon the common law, will not be controlled by the rulings of the courts of Alabama.   See, in this connection, *Pattillo* v. *Alexander,* 96 *Ga.* 60; *Krogg* v. *Atlanta R. Co.,* 77 *Ga.* 202.   In *Krogg's* case, just cited, it is said: "This court is not bound by the interpretation of the common law made by the courts of Alabama, although the injury for which the suit is brought occurred in that State; but this court will decide what is the common law.   As to the construction which the courts of that State place upon its own statutes or other local laws bearing upon the case, this court will follow their decision."   When we come to determine the point in question by the common law, as interpreted by this court, we find the question settled by the ruling in the case of *Howard* v. *Brown,* 3 *Ga.* 531, where Judge Warner says: "We think it is clearly established, both upon principle and authority,

that before the enactment of our statute, the holder of the note could not have been compelled to have sued the makers at the request of the indorser; and if such a requisition had been made on the holder by the indorser, and the holder had neglected or refused to have instituted suit against the makers until they had removed beyond the jurisdiction of the State, or become insolvent, the indorser would not have been discharged, notwithstanding the holder could have instituted the suit against the makers by the exercise of ordinary diligence." Under this ruling, the surety could not, at common law, be discharged by the failure of the payee to sue, and the plea setting up such defense was necessarily without merit, and the court did not err in striking the same.

4. To what is said in the fourth headnote it may be added that the makers of the notes under consideration, by express written contract, promised to pay a stated sum as principal, with interest on the same at eight per cent. per annum. The notes, therefore, conform exactly to the laws of Georgia upon the subject, and consequently are neither unreasonable nor violative of the policy of our law. In the case of the *Union Savings Bank* v. *Dottenheim,* 107 *Ga.* 609, Justice Cobb gives an interesting history of the law upon the subject of interest, and incidentally mentions a suggestion as to whether or not, at common law, it was lawful in England to take any interest whatever, and, if so, how much, for the use of money. But the determination of the case under consideration did not render a decision on the point necessary, and an investigation upon that point was not pursued to a conclusion. The question presented in this case is whether or not the common law of England as of force in the United States permits the taking of interest. In Webb on Usury, §5, it is said: "It is generally accepted that at common law there was no limit to fairly made charges for the use of money agreed upon by the parties to a loan." In the case of Coleman *v.* Commins, 77 Cal. 548, it is said: "The illegality of usury is wholly the creature of legislation." In Tyler on Usury, chap. v, p. 64, it is said: "Usury as at present understood is unknown to the common law, and depends wholly upon statutory enactment." In the case of Fisher *v.* Bidwell, 27 Ct. 372, the court says: "There is no doubt that considering this question independently of our usury laws, and as one to be determined by the common law as administered in our courts, the lender would be

entitled in such a case to recover not only the principal sum lent, but the interest thereon according to the rate agreed on. . . By the common law there is no limit to the compensation for the use of money which may be agreed on between the parties to a loan. . . It is only by statute that such contracts are invalidated on account of the amount of interest agreed to be paid." In the case of Smith *v.* Muncie National Bank, 29 Ind. 161, it is said: "We presume that the common law remains unchanged by statute in Ohio, and that no limit is fixed as to the rate of interest on money." In the case of White *v.* Frielander, 35 Ark. 52, it is said: "But the notes were made payable in Tennessee. There was no proof of what her laws were in this regard. . . Independently of statutes, there is no principle of common law defining usury or punishing it by forfeitures." In *Ballard* v. *Bank,* 61 *Ga.* 460, Justice Bleckley says: "By the act of February 19, 1873, all laws on the subject of usury were repealed. It was after this repeal that the new note was given, and the deed was made to secure it. There was, therefore, no law in existence by virtue of which the deed could become infected. Where there is no law, there can be no transgression." Again in *Reynolds* v. *Neal,* 91 *Ga.* 610, it was held that promissory notes given when there was no statute on the subject of usury are not usurious, no matter how much past interest or usury was embraced in them as a part of the principal. In *Rooney* v. *Southern B. & L. Asso.,* 119 *Ga.* 944, Justice Lamar says: "Nor would the result be different on the presumption that the common law prevails in Alabama, for by it the rate of interest on money was not limited," citing Smith *v.* Bank, 29 Ind. 158, and White *v.* Frielander, 35 Ark. 55. In the case of Houghton *v.* Page, 2 N. H. 42, it is said: "Any interest on money loaned was at common law unlawful. But that principle of the common law is not applicable to our state of society; and by no part of the common law in force here is any rate of interest unlawful, unless so great as to become unconscionable. There can be in force here only those principles of the common law which have been expressly adopted, or which, being applicable to our state of society or jurisprudence, and founded on intelligent reason, may be stated as impliedly binding." The weight of authority supports the proposition that the common law of force in America does not prohibit contracts for the payment of interest where the sum agreed upon

is not unconscionable. In recognition of this rule and in order to avoid uncertainty as to rates of interest, and to prevent exorbitant charges for the use of money, most of the States have by express statute passed laws against usury. So treating the common law as of force in Alabama, and in view of the weight of authority on the right to collect interest, we can see no reason why the rate of interest promised in the contract between the parties at issue should not be paid.

5. The defendant, among other things, pleaded as follows: "That he is informed and he believes that some credit or credits should be placed upon said notes, and asks that plaintiff be made to make a full accounting for same not under oath." No amounts nor dates of payment were alleged. The court sustained a demurrer to this part of the plea, which challenged the same upon the ground "that no sufficient facts are pleaded to legally set up payment." In this case it will be observed that the defendant does not in his plea allege either the time or place or amount of any payment to the credit of which he thinks he may be entitled, nor say with certainty that anything was ever paid. The allegations are so vague and indefinite that the plea amounts to nothing, and is open to demurrer. See, in this connection, the cases of *Wortham* v. *Sinclair*, 98 *Ga.* 173; *O'Neal* v. *Phillips*, 83 *Ga.* 556; *Baer* v. *Christian*, 83 *Ga.* 322. The plea was properly stricken.

6, 7. The rulings announced in the 6th and 7th headnotes require no further elaboration.

8. Under the evidence the defendant did not question the execution of the note. It was shown by defendant's witnesses that the principal debt was $147, and the rate of interest promised by the terms of the note was 8 per cent. The court directed a verdict for $147, principal, with interest on that sum at the rate of 8 per cent. per annum, and for attorney's fees. As the debt was not usurious, there could be no forfeiture of interest. These are the only attacks made on the direction of a verdict, and as they are without merit, no error is shown.

*Judgment affirmed. All the Justices concur.*