Filed 5/23/14 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ROBERT H. BISNO,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>ROBERT J. KAHN et al.,<br><br>      Defendants and Respondents. | A133537<br><br>(Alameda County<br>Super. Ct. No. RG09455030) |
| JAMES C. COXETER,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>ROBERT J. KAHN et al.,<br><br>      Defendants and Respondents. | A134008<br><br>(Alameda County<br>Super. Ct. No. RG10525649)<br><br>**ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br>[NO CHANGE IN JUDGMENT]** |

**THE COURT:**

It is ordered that the opinion filed herein on April 25, 2014, be modified as follows:

1. On page 1, in the last sentence of the first full paragraph, delete "and seek treble damages," so that the sentence reads:

The judgment debtors now claim the forbearance fees are usurious.

2. On page 5, in the first line, replace the heading "***The Coxeter and Bisno Usury Actions***" with the following:

***The Coxeter and Bisno Actions***

1

3.    On page 6, in the first sentence of the first full paragraph, delete "usury," so that the sentence reads:

In the action filed by Coxeter, the parties filed cross-motions for summary judgment.

4.    On page 14, after the first sentence of the first full paragraph ending "as that term is used in the usury law," add as footnote 4 the following footnote, which will require renumbering of all subsequent footnotes:

[4]Coxeter asserts that he never suggested a "judgment" is a thing in action, instead claiming that "the judicial process of collection of unsatisfied judgments" qualifies as a thing in action.  As we explain below, although a judgment may be distinct from the process of collecting a judgment, it is a distinction without a difference for purposes of our inquiry.

5.    On page 20, in the first sentence of the last paragraph, delete "and counsel for Coxeter," so that the sentence reads:

At oral argument on appeal, counsel for Bisno responded that there is no requirement mandating the imposition of treble damages in a case in which usurious interest is received.

6.    At the end of the third full paragraph on page 26, after the sentence ending "does not appear to be a widespread problem," add as footnote 9 the following footnote:

[9]Insofar as it may be claimed that a lender can evade the usury law by entering into a stipulated judgment with a borrower—and thus recharacterize a loan as a judgment—the claim is mistaken.  When the form of a transaction is a " 'mere sham and subterfuge to cover up a usurious transaction,' " a court will " 'pierce the veil of any plan designed to evade the usury law and in doing so to disregard the form and consider the substance.' " (*West Pico Furniture Co. v. Pacific Finance Loans* (1970) 2 Cal.3d 594, 603.)  If the substance of a transaction is a loan, a lender cannot avoid the usury law simply by structuring the form of the transaction to include entry of a stipulated judgment in favor of the lender.

There is no change in the judgment.

The petitions for rehearing are denied.

Dated: _____        _____ P.J.

2

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ROBERT H. BISNO,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>ROBERT J. KAHN et al.,<br><br>      Defendants and Respondents. | A133537<br><br>(Alameda County<br>Super. Ct. No. RG09455030) |
| JAMES C. COXETER,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>ROBERT J. KAHN et al.,<br><br>      Defendants and Respondents. | A134008<br><br>(Alameda County<br>Super. Ct. No. RG10525649) |

These appeals present the question of whether California's usury law applies to a judgment creditor's agreement to forbear collecting on a judgment. In the actions below, certain judgment creditors agreed to delay executing on their judgments in exchange for the payment of forbearance fees in addition to statutory postjudgment interest of 10 percent on the unpaid balance of the judgments. The judgment debtors now claim the forbearance fees are usurious and seek treble damages.

We conclude the forbearance fees do not violate California's usury law. Usury liability is wholly a creature of statute. Because the usury law does not expressly prohibit a party from entering into an agreement to forbear collecting on a judgment, usury liability does not extend to judgment creditors who receive remuneration beyond the statutory 10 percent interest rate in exchange for a delay in enforcing a judgment.

1

Although we conclude that nothing prohibits parties from entering into an agreement to forbear collecting a judgment, we hasten to add that any forbearance fee does not become part of the judgment and is not an amount that must be paid to satisfy the judgment under the Enforcement of Judgments Law (Code Civ. Proc., § 680.010 et seq.). Rather, a forbearance agreement is a contract between the judgment creditor and the judgment debtor that is separate from the judgment to which it applies. Consequently, a forbearance agreement must be enforced in a separate contract action and is subject to standard contractual defenses such as duress and unconscionability.

## FACTUAL AND PROCEDURAL BACKGROUND

### *The Roberts Action*

The plaintiffs in the actions from which these appeals are taken, Robert H. Bisno and James C. Coxeter, were defendants in an earlier fraud action entitled *Arthur D. Roberts et al. v. Robert H. Bisno et al.,* Alameda County Superior Court Case No. RG05247811 (the Roberts action). The plaintiffs in the Roberts action alleged that Bisno, Coxeter, and certain entity defendants committed fraud in the sale of real estate limited partnership units. Eight of the plaintiffs in the Roberts action came to be known as the "preference plaintiffs" because they were granted trial preference as a result of their age and infirmity. The preference plaintiffs proceeded to trial and secured judgments against the defendants in the Roberts action, including Bisno and Coxeter, totaling over $1.4 million. After the trial court awarded attorney fees and costs of over $1.8 million to the preference plaintiffs, the total amount of the judgments was increased to over $3.2 million. Each of the judgments in the Roberts action specified that interest on the amount of the judgment would accrue at a rate of 10 percent per year.

Bisno, Coxeter, and the other defendants appealed the judgments. In March 2008, Division Four of this court affirmed the judgments in the Roberts action. The defendants in the Roberts action filed an undertaking by private sureties to stay enforcement of the judgments while the appeal was pending.

2

### *The Forbearance Agreements*

After the Court of Appeal affirmed the judgments in the Roberts action, Bisno entered into a series of three agreements in which he sought to delay enforcement of the judgments. In the first agreement executed in March 2008, the preference plaintiffs agreed not to enforce the judgments before August 25, 2008, in return for an agreement by the defendants not to pursue further appeals. The agreement specified that interest at a rate of 10 percent would continue to accrue on the judgments until paid. The agreement also provided for the assessment of a surcharge of $500 per day for each day the judgments were not paid after August 25, 2008. Bisno was the only defendant that signed the March 2008 agreement. One of the attorneys who represented the preference plaintiffs, Robert J. Kahn, signed the agreement on behalf of the preference plaintiffs. It is undisputed that the daily surcharge was never assessed or paid.

In late August 2008, counsel for Bisno contacted Kahn, the attorney for the preference plaintiffs, and sought a further agreement to defer enforcing the judgments in order to preserve a $60 million real estate sale that was in escrow and that would be threatened by collection efforts. Bisno's counsel made a series of increasing offers to Kahn and, when he received no counteroffers other than that his client should pay the judgments down by half, he reiterated that Bisno was willing to pay the preference plaintiffs in exchange for their agreement to delay executing on the judgments as long as the amount was not unreasonable. These discussions led the parties to execute a forbearance agreement in August 2008.

The August 2008 forbearance agreement was signed by Bisno and Kahn, as attorney for the preference plaintiffs. The agreement provided that Bisno would pay a forbearance fee of $250,000 "to the preference plaintiffs via their counsel." In return, the preference plaintiffs agreed to delay executing on the judgments in the Roberts action for another 30 days. The agreement specified that the $250,000 forbearance fee had no effect on the amount of the judgments or the preference plaintiffs' right to statutory interest at a rate of 10 percent. The agreement further clarified that the forbearance fee would not be credited against the principal or interest due on the judgments.

At the end of the 30-day forbearance period, Bisno's counsel sought a further extension from Kahn. This request led to the execution in September 2008 of another forbearance agreement by Bisno and Kahn. The September 2008 forbearance agreement provided that Bisno would pay $275,000 "to the preference plaintiffs via their counsel" in exchange for a further 30-day delay in executing on the judgments. Like the August 2008 forbearance agreement, the September 2008 forbearance agreement specified that the $275,000 forbearance fee would not be credited against the principal or interest due on the judgments.

Bisno paid forbearance fees totaling $525,000 pursuant to the forbearance agreements executed in August and September 2008. Bisno's codefendant in the Roberts action, Coxeter, did not pay any of the forbearance fees and was not a party to the forbearance agreements.

After the additional 30-day forbearance period provided for in the September 2008 forbearance agreement expired and the judgments remained unsatisified, the preference plaintiffs sought to enforce the judgments against the sureties. The court entered a judgment against the sureties on December 11, 2008, including principal and interest, in the amount of $4,179,048.10. In late December 2008, Bisno paid $3,944,000 toward the judgments in the Roberts action. Because the forbearance fees had not been credited against the principal or interest due on the judgments, the remaining unpaid balance on the Roberts action judgments was approximately $300,000. In order to avoid execution on his assets, Coxeter, Bisno's codefendant in the Roberts action, made a payment of $306,978.14 toward the judgments in June 2009. Coxeter made an additional payment of $35,000 in October 2009 in order to obtain a full satisfaction of the judgments. On October 30, 2009, the preference plaintiffs filed documents acknowledging full satisfaction of their judgments.

## The Coxeter and Bisno Usury Actions

In December 2008, Coxeter filed an action against the preference plaintiffs and Kahn alleging that they had violated California's usury law by collecting $525,000 from Bisno and failing to credit that amount against the principal and interest due on the judgments in the Roberts action. In an amended complaint filed in July 2010, Coxeter asserted a single cause of action for money had and received. In both his original and amended complaint, Coxeter admitted that it was Bisno who agreed to pay the purportedly usurious $525,000 forbearance fees, and he also admitted that Bisno actually paid the fees. Nevertheless, Coxeter alleged that the forbearance fees should have been applied against the balance due on the judgments, and he claimed that he would not have owed anything to the preference plaintiffs if the forbearance fees had been properly credited. Consequently, he sought the return of the money he had paid to satisfy the judgments in the Roberts action.

In May 2009, Bisno filed his own complaint against the preference plaintiffs and Kahn alleging a violation of the usury law. Bisno alleged that the $525,000 he paid in forbearance fees was usurious. He sought to recover treble damages as well as punitive damages and attorney fees.

## Summary Judgment Motions

In the usury action filed by Bisno, the preference plaintiffs and Kahn each moved for summary judgment. They asserted that an agreement to forbear collecting a judgment is not subject to California's usury law. Kahn separately argued that, as the attorney for the preference plaintiffs, he was merely the agent of the preference plaintiffs and could not be held liable for usury.

The trial court granted summary judgment in the Bisno action in favor of the preference plaintiffs and Kahn. The court reasoned that "[l]iability for usury is purely statutory, and in the absence of a statutory or constitutional provision limiting the interest that may be charged for an agreement to forbear from collection efforts, [the preference plaintiffs and Kahn] have no liability for the forbearance agreements at issue in this case." With regard to Kahn's liability, the court ruled that he was not a proper party to a

5

usury claim, reasoning that he was merely acting as the agent of the preference plaintiffs. The court entered a judgment from which Bisno timely appealed.

In the usury action filed by Coxeter, the parties filed cross-motions for summary judgment. The parties' arguments concerning the applicability of usury law largely mirrored the contentions made by the parties in the Bisno action. In addition, the preference plaintiffs and Kahn also based their motion on the independent ground that Coxeter lacked standing to assert a usury claim because he was not a party to the supposedly usurious forbearance agreements and had not paid the forbearance fees.

The trial court denied Coxeter's summary judgment motion and granted summary judgment for the preference plaintiffs and Kahn. The court offered the same reasoning for rejecting the usury claim as it had in the Bisno action. The court further explained that Coxeter had not demonstrated any entitlement to have the money he paid to satisfy the judgments returned to him, even if the forbearance agreements between Bisno and the preference plaintiffs were usurious. According to the trial court, the preference plaintiffs and Kahn were either entitled to keep the forbearance payments, if they were not usurious, or they were required to return them to Bisno, if they were found to be usurious. The court explained that crediting the forbearance payments against the judgments was not an option. After the court entered judgment in favor of the preference plaintiffs and Kahn, Coxeter filed a timely notice of appeal.

We consolidated the appeals by Bisno and Coxeter for purposes of oral argument and decision.

DISCUSSION

**1.** *Standard of Review*

Summary judgment must be granted when there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) We apply de novo review to a trial court ruling on a motion for summary judgment. (*Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336.)

6

## 2.     *California's Usury Law*

The purpose of the usury law is " 'to protect the necessitous, impecunious borrower who is unable to acquire credit from the usual sources and is forced by his economic circumstances to resort to excessively costly funds to meet his financial needs.' " (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 804–805 (*Ghirardo*).)  Our Supreme Court has noted that "the usury law is complex and is riddled with so many exceptions that the law's application itself seems to be the exception rather than the rule." (*Id.* at p. 807.)

"The essential elements of usury are: (1) The transaction must be a loan or forbearance; (2) the interest to be paid must exceed the statutory maximum; (3) the loan and interest must be absolutely repayable by the borrower; and (4) the lender must have a willful intent to enter into a usurious transaction." (*Ghirardo, supra,* 8 Cal.4th at p. 798.) "A transaction is rebuttably presumed *not* to be usurious." (*Ibid.*)

Liability for usury is not a common law cause of action but is instead statutory in nature.  (See *Penziner v. West American Finance Co.* (1937) 10 Cal.2d 160, 170; *Coleman v. Commins* (1888) 77 Cal. 548, 554; *Clarke v. Horany* (1963) 212 Cal.App.2d 307, 311.)  Before California adopted a usury law, our Supreme Court in 1888 considered a claim that rates of interest charged were "exorbitant and oppressive." (*Coleman v. Commins, supra,* at p. 554.)  Although the court acknowledged the rates seemed very high, it rejected the claim, reasoning that "[t]he illegality of usury is wholly the creature of legislation, and in this state nothing has been prescribed by the legislature to relieve parties from contracts providing for exorbitant rates of interest." (*Ibid.*)  After California adopted legislation prohibiting usury, courts limited the scope of liability for usury to the express terms of the legislation and rejected efforts to expand usury liability through the application of principles derived from common law.  For example, in *Clarke v. Horany, supra,* 212 Cal.App.2d at pages 310–311, the court addressed whether an agent or abettor is liable for usury based on common law principles extending tort liability to persons that aid in the commission of the tort.  Because usury liability rests on a different foundation than common law torts, the court concluded that agents and abettors could not be held

liable under the usury law. (*Id.* at p. 311.) According to the court, "[t]he liability is purely statutory [citation] and the statute makes no provision for imposing liability on agents or abettors of the offending creditor." (*Ibid.*)

The usury law is based upon article XV, section 1 of the California Constitution as well as an initiative measure adopted in 1918. (*Ghirardo, supra,* 8 Cal.4th at p. 798 & fn. 2; *Roes v. Wong* (1999) 69 Cal.App.4th 375, 378.) The initiative measure has not been codified but is published in Civil Code sections 1916–1 through 1916–5. (*Roes v. Wong, supra,* at p. 378.) The initiative measure remains in full force and effect except to the extent it conflicts with the constitutional usury provision. (*Id.* at p. 378, fn. 3; *Ghirardo, supra,* at p. 798, fn. 2; *Penziner v. West American Finance Co., supra,* 10 Cal.2d at pp. 170–178.) We refer to the constitutional and initiative provisions collectively as the "usury law." Where necessary to distinguish between the two sources of the usury law, we will refer to the "1918 usury initiative" or the "constitutional usury provisions."

The 1918 usury initiative contains five sections, the first three of which are relevant to our inquiry.[1] Section 1 provides that "[t]he rate of interest upon the *loan or forbearance of any money, goods or things in action* or on accounts after demand or judgments* rendered in any court of this state" shall be 7 percent per annum, but that parties may contract for a greater rate of interest not exceeding 12 percent per annum. (Civ. Code, § 1916–1, italics added.) Thus, section 1 of the 1918 usury initiative, which could be characterized as a rate-setting provision, specifically refers to judgments.

Section 2 of the 1918 usury initiative contains prohibitory language and provides that no person or entity "shall directly or indirectly take or receive, in *money, goods or things in action*, or in any other manner whatsoever, any greater sum or any greater value

---

[1]Section 4 of the 1918 usury initiative repeals certain sections of the Civil Code in conflict with the initiative, and section 5 declares that the 1918 usury initiative may be referred to as the " 'usury law.' " (Civ. Code, §§ 1916–4, 1916–5.) Because a later-enacted constitutional provision supplements the 1918 usury initiative and supersedes it to the extent there is a conflict, California's "usury law" is no longer limited to the 1918 usury initiative. (*Ghirardo, supra,* 8 Cal.4th at p. 798, fn. 2.)

for the *loan or forbearance of money, goods or things in action*" than at a rate of 12 percent per annum.  (Civ. Code, § 1916–2, italics added.)  Section 2 further states that interest shall not be compounded, and it provides that any agreement or contract in conflict with section 2 is "null and void" and cannot be enforced in a legal action to recover interest under the agreement.  (*Ibid.*)  Unlike the rate-setting provision in section 1 of the 1918 usury initiative, the usury prohibition contained in section 2 contains no mention of judgments.

Section 3 of the 1918 usury initiative establishes civil and criminal liability for violations of the usury law.  (Civ. Code, § 1916–3.)  Subdivision (a) of section 3 provides that any person or entity that pays more in interest than is allowed under sections 1 or 2 "for any *loan or forbearance of money, goods or things in action*" is entitled to bring a civil action for treble damages against the party that received the interest.  (*Id.,* subd. (a), italics added.)  The subdivision providing for treble damages in a civil action does not refer to judgments.

Subdivision (b) of section 3 of the 1918 usury initiative establishes criminal liability for a usury violation.  Under that subdivision, a person who willfully "makes or negotiates, for himself or another, a *loan of money, credit, goods, or things in action*" is guilty of the felony of loan-sharking if that person directly or indirectly charges or receives any interest or other compensation that exceeds the legally allowable rate.  (Civ. Code, § 1916–3, subd. (b), italics added.)  The subdivision providing for criminal liability contains no reference to judgments.  In addition, it refers exclusively to a "loan" and does not include reference to a "forbearance" giving rise to criminal liability.

The first modification to the 1918 usury initiative took the form of a constitutional amendment submitted to the electorate by the Legislature in 1934.  (*Penziner v. West American Finance Co., supra,* 10 Cal.2d at pp. 170, 177–178.)  The effort to modify the 1918 usury initiative was prompted by the need to treat lenders differently depending upon the nature of the lender or the purpose for the loan.  (*Id.* at pp. 177–178.)  The constitutional amendment was enacted as former article XX, section 22.  (*Id.* at p. 170.)  The constitutional usury provisions reduced the maximum permissible rate from

9

12 percent to 10 percent per annum, exempted various classes of lenders from its provisions, and gave the Legislature the power to set the rates charged by the exempted groups.  (*Id.* at p. 177.)  The constitutional usury provisions did not expressly provide for any remedies or penalties.  (*Id.* at pp. 176–177.)

Since their adoption in 1934, the constitutional usury provisions have been amended and re-enacted in their current form as section 1 of article XV of the state Constitution.  (*OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.* (2008) 168 Cal.App.4th 185, 198 (*OCM*).)  At present, article XV, section 1 of the California Constitution provides in relevant part that "[t]he rate of interest upon the *loan or forbearance of any money, goods, or things in action*, or on accounts after demand, shall be 7 percent per annum but it shall be competent for the parties to any *loan or forbearance of any money, goods or things in action* to contract in writing for a rate of interest" that varies depending upon the intended use of the money, goods, or things in action.  (Italics added.)  The constitutional usury provisions prohibit persons and entities from receiving "more than the interest authorized by this section upon any *loan or forbearance of any money, goods or things in action.*"  (Cal. Const., art. XV, § 1, italics added.)  Neither the provision setting maximum interest rates on loans and forbearances nor the prohibition against collecting interest in excess of the maximum rate mentions judgments.  Instead, section 1 of article XV of the California Constitution contains a separate provision regarding interest rates on judgments, which states in relevant part: "The rate of interest upon a judgment rendered in any court of this state shall be set by the Legislature at not more than 10 percent per annum."  The Constitution provides for a default interest rate of 7 percent per annum on judgments if the Legislature does not set a rate.  (Cal. Const., art. XV, § 1.)  The rate of interest on judgments is currently set at 10 percent by statute (Code Civ. Proc., § 685.010, subd. (a)), although the default rate of 7 percent applies to judgments against the state and local public entities.  (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 348; *311 South Spring Street Co. v. Department of General Services* (2009) 178 Cal.App.4th 1009, 1013, fn. 1.)

10

In sum, the usury law includes: (1) rate-setting provisions that set forth presumptive and maximum interest rates (Cal. Const., art. XV, § 1; Civ. Code, § 1916–1); (2) prohibition provisions that forbid the receipt of interest above the maximum rate (Cal. Const., art. XV, § 1; Civ. Code, § 1916–2); and (3) remedial provisions that provide civil and criminal penalties for a violation (Civ. Code, § 1916–3). Although the rate-setting provisions expressly refer to judgments, the prohibition and remedial provisions contain no reference to judgments.

**3.      *Applicability of Usury Law to Forbearance Fees Collected by Judgment Creditor***

The question presented by these appeals is not the broader one of whether the usury law has some bearing upon interest levied upon judgments. Plainly, the usury law refers to judgments in that it affords the Legislature authority to set a maximum statutory rate of interest on judgments. (Cal. Const., art. XV, § 1.) The Legislature cannot set the statutory rate above the constitutional maximum (*ibid.*), and a court is bound to apply the statutory rate in determining whether a judgment has been satisfied. (See Code Civ. Proc., § 695.210, subd. (b).) The inquiry here does not turn on limitations placed on the Legislature's authority to set a statutory interest rate applied to judgments. Rather, the issue is more appropriately framed as whether the usury law prohibits a judgment creditor from accepting a forbearance fee in addition to the statutory interest automatically applied by a court to a judgment. As we explain, the usury law does not extend liability in this circumstance.

We are presented with a question of statutory interpretation. In a case such as this one, where the law is enacted and amended by initiatives presented to the voters, we apply standard rules of statutory construction. (*People v. Superior Court* (*Pearson*) (2010) 48 Cal.4th 564, 571.) "We first consider the initiative's language, giving the words their ordinary meaning and construing this language in the context of the statute and initiative as a whole. If the language is not ambiguous, we presume the voters intended the meaning apparent from that language, and we may not add to the statute or rewrite it to conform to some assumed intent not apparent from that language. If the

11

language is ambiguous, courts may consider ballot summaries and arguments in determining the voters' intent and understanding of a ballot measure." (*Ibid.*)

Turning to the language of the usury law, the provisions prohibiting usury are found in Civil Code section 1916–2 and article XV, section 1 of the California Constitution. As noted above, the prohibitions apply to any usurious "loan or forbearance of any money, goods or things in action . . . ." (Civ. Code, § 1916–2; Cal. Const., art. XV, § 1.) The provisions omit mention of judgments. Likewise, civil liability for usury, including the right to recover treble damages, is limited to persons or entities that receive usurious interest on "any loan or forbearance of money, credit, goods, or things in action . . . ." (Civ. Code, § 1916–3, subds. (a) & (b).) Again, the provision does not refer to judgments.

The omission of any reference to judgments in the prohibition and remedial provisions is significant because the usury law elsewhere refers to judgments in the rate-setting provisions as distinct from a "loan or forbearance of any money, goods or things in action." For example, the constitutional usury provisions establish maximum rates for a "loan or forbearance of any money, goods, or things in action," and separately establish a maximum rate for a judgment. (Cal. Const., art. XV, § 1.) Similarly, the 1918 usury initiative distinguishes a "loan or forbearance of any money, goods or things in action" from a judgment for purposes of establishing a maximum rate. (Civ. Code, § 1916–1.) It is a well recognized principle of statutory construction that when a term is used in one place and that same term has been excluded in another place, the term should not be implied where it has been excluded. (*Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 725.) As applied here, that principle supports a conclusion that the provisions in the usury law prohibiting persons or entities from charging usurious interest rates—which contain no reference to judgments—do not extend to agreements to forbear collecting on a judgment. (Civ. Code, § 1916–2; Cal. Const., art. XV, § 1.) Similarly, the remedial provisions of the usury law providing for treble damages do not apply to such agreements because the statutory remedy is limited to "any loan or forbearance of money, goods or

12

things in action" that exceeds the maximum interest rate allowed.  (Civ. Code, § 1916–3, subd. (a).)

The absence of any reference to judgments in the prohibition and remedial provisions of the usury law cannot reasonably be regarded as an oversight.  (Cf. *Kennedy Wholesale, Inc. v. State Bd. of Equalization* (1991) 53 Cal.3d 245, 252 [omission of restriction in initiative provision found in related provision of initiative implies that omission reflects voters' intent].)  Had the voters intended to extend statutory usury liability to judgment creditors who collect forbearance fees, it would have been a simple matter to do so.[2]

Furthermore, dating back to the adoption of the constitutional usury provisions in the 1930's, the usury prohibition has specifically applied to the receipt of usurious interest from any "borrower."  (Cal. Const., art. XV, § 1; see *OCM, supra,* 168 Cal.App.4th at p. 198 [setting forth constitutional usury provisions as originally enacted].)  Case law construing the usury law establishes that a party must clearly come "within the definitive edict of the constitutional provision of a 'borrower' " to pursue a usury claim.  (*Barnes v. Hartman* (1966) 246 Cal.App.2d 215, 220; see also *Roes v. Wong, supra,* 69 Cal.App.4th at p. 378.)  By its express terms, the constitutional proscription does not apply to the receipt of interest in excess of the statutory rate from a judgment debtor.  Moreover, a reasonable interpretation of the term "borrower" does not encompass a judgment debtor.

A borrower is someone who borrows, which is defined as "to receive with the implied or express intention of returning the same or an equivalent," or "to borrow (money) with the intention of returning the same plus interest."  (Webster's Collegiate

---

[2]In order to convey that the usury proscription in the California constitution applies to judgments, it would have only required the addition of the following six, italicized words to article XV, section 1:  "No person, association, copartnership or corporation shall by charging any fee, bonus, commission, discount or other compensation receive from *a judgment debtor or* borrower more than the interest authorized by this section upon any *judgment or* loan or forbearance of any money, goods or things in action."

Dict. (10th ed. 2001) p. 133.) Thus, a borrower takes or receives something of value, such as money, with the intention of returning it later. (See *Home Indem. Co. v. King* (1983) 34 Cal.3d 803, 813; accord, *Barnes v. Hartman, supra,* 246 Cal.App.2d at p. 220.) A judgment debtor simply cannot be characterized as a borrower who intends to return something of value that was borrowed.[3] Consequently, the plain language of the constitutional usury provisions does not permit a construction that prohibits the receipt of interest in excess of the statutory rate from a judgment debtor.

Both Bisno and Coxeter assert that the usury law applies to the receipt of forbearance fees because a judgment constitutes a "thing[] in action" as that term is used in the usury law. We disagree. As an initial matter, their proposed interpretation is nonsensical when the usury law is taken as a whole. The constitutional usury provisions set maximum rates for a "loan or forbearance of any . . . things in action" and set a different maximum rate for a "judgment." (Cal. Const., art. XV, § 1.) Because the rate-setting provisions of the usury law treat judgments differently from things in action, a judgment cannot be considered a thing in action for purposes of those provisions. Applying the principle that terms ordinarily possess a consistent meaning throughout a statutory scheme (*People v. Standish* (2006) 38 Cal.4th 858, 870), we conclude that the term "things in action" as used in the usury law does not encompass a judgment.

Further, the terms "things in action" and "judgment" have different meanings. Civil Code section 953 defines a "thing in action" as a "right to recover money or other personal property by a judicial proceeding." "A thing in action includes a right of action for personal injury [citation], breach of contract [citation], or fraud." (*People v. Baker*

---

[3]In *Barnes v. Hartman, supra,* 246 Cal.App.2d at page 220, the court discussed various definitions of borrower that rest on the notion that a borrower is one who receives a loan of money. The court also referenced a New York case standing for the proposition that a "debtor" is considered a borrower. (*Ibid.*) To be clear, the New York case cited in *Barnes v. Hartman* does not stand for the proposition that a judgment debtor is considered a borrower. The transaction at issue in the New York case involved a title company that, in effect, received a loan from purchasers of certificates that were secured by mortgages and other assets. (*Matter of Title & Mtge. Guarantee Co. of Buffalo* (1935) 246 A.D. 435, 436–437.)

14

(1978) 88 Cal.App.3d 115, 119.) Thus, as a general matter, a thing in action includes causes of action that have yet to be adjudicated in a judicial proceeding or reduced to judgment. By contrast, a judgment is "the final determination of the rights of the parties in an action or proceeding." (Code Civ. Proc., § 577.)

Coxeter places heavy reliance on an 1898 Supreme Court case, *Haskins v. Jordan* (1898) 123 Cal. 157, 161 (*Haskins*), for the proposition that a judgment is a thing in action. While one could interpret the case to stand for that proposition, it does not compel the interpretation of the usury law that Coxeter proposes.[4] Coxeter relies on the rule of statutory construction that a word or phrase that has been construed by the courts is presumed to have that meaning in any subsequently enacted legislation. (See *In re Jeanette D.* (1980) 28 Cal.3d 210, 216.) The flaw in Coxeter's argument is that maxims of statutory construction are not immutable principles that dictate how a statute is to be interpreted. (See *In re Joseph B.* (1983) 34 Cal.3d 952, 957.) They exist simply to aid in the interpretation of a statute and will not be applied when doing so would run counter to a clear legislative intent or the plain language of the statute. (*Ibid.*; see also *Arntz Builders v. Superior Court* (2004) 122 Cal.App.4th 1195, 1205; *Playboy Enterprises, Inc. v. Superior Court* (1984) 154 Cal.App.3d 14, 24.) In this case, application of the rule of

---

[4] In *Haskins,* the court addressed whether the assignee of a judgment was subject to claims and defenses that could be asserted against the judgment creditor that assigned the judgment, including the judgment debtor's right to set off the judgment with another judgment. (*Haskins, supra,* 123 Cal. at pp. 160–161.) Most modern-day practitioners would recognize that the court's inquiry is easily answered by the rule that an assignee stands in the shoes of the assignor. (See *Professional Collection Consultants v. Hanada* (1997) 53 Cal.App.4th 1016, 1018–1019.) This rule has a "loud and consistent" grounding in common law. (*Id.* at p. 1019.) Nevertheless, in *Haskins* the court addressed the question by reference to a statute concerning the assignment of things in action. (*Haskins, supra,* at p. 161; see Code Civ. Proc., § 368.) The court applied the statutory provision after concluding that "inherent" in a judgment is the right described as a thing in action. (*Haskins, supra,* at p. 161.) One could debate whether the court's analysis of a judgment as a thing in action has a broader application beyond the limited issue before the court in *Haskins*, or whether the analysis was even necessary in light of the common law rule that yields the same conclusion. It is telling that Coxeter has failed to cite any cases decided since 1898 that plainly and unequivocally hold that a judgment is considered a thing in action for all purposes.

15

statutory construction urged by Coxeter would be directly contrary to the plain language of the usury law, which distinguishes between things in action and judgments by assigning a different maximum rate of interest to each. Consequently, for purposes of the usury law, it cannot be the case that a judgment is considered a thing in action.

In addition, contrary to Coxeter's claim, we are not bound by principles of stare decisis to apply *Haskins* to a question of statutory interpretation. The question before us is not whether *Haskins* is good law or whether that decision is binding on lower courts. Rather, the question presented is whether it is appropriate to employ a rule of statutory construction that would define a statutory term by reference to *Haskins*. For reasons we have explained, it is inappropriate to apply that rule of statutory construction in light of the plain language of the usury law.

Coxeter purports to answer the obvious flaw in his argument by distinguishing between a "judgment" and "the judicial process of collection of unsatisfied judgments." We fail to see how the nuanced distinction he attempts to draw resolves the dilemma. The fact remains that the usury law uses the term "judgment" in a different sense than "things in action." Merely adding the terms "collection of" or "enforcement of" to the term "judgment" does not transform it into a thing in action. Further, the term "judgment" as used in the rate-setting provisions of the usury law necessarily refers to the collection or enforcement of a judgment because it limits the statutory interest rate that can be applied in *enforcing* the judgment.

Nothing in the legislative history of the usury law causes us to reconsider our conclusion. While the materials submitted to the voters discussed setting maximum interest rates applicable to various items, including judgments, there was no discussion of a prohibition against judgment creditors receiving forbearance fees. Indeed, the ballot pamphlets distinguished judgments from other types of obligations. For example, in 1978 the argument in favor of giving the Legislature the power to adjust the statutory rate applicable to postjudgment interest clarified that "[t]his interest rate is not to be confused with the interest rates charged on purchases of homes or goods, or on loans of money." (Ballot Pamp., Primary Elec. (June 6, 1978) argument in favor of Prop. 9, p. 42.)

16

Moreover, the effort to reform the law was not focused on judgment creditors taking advantage of judgment debtors. Instead, the concern was that the usury law was unfair to judgment creditors because "wealthy interests" such as insurance companies would have no financial incentive to satisfy judgments unless the Legislature could adjust the interest rate to reflect current financial conditions. (Ballot Pamp., Primary Elec. (June 6, 1978) rebuttal in favor of Prop. 9, p. 43.)

To the extent there is case law interpreting the usury law as it applies to judgments, it tends to support our view that the omission of judgments from the prohibition and remedial provisions of the usury law was deliberate. Of particular relevance is the court's analysis in *OCM, supra,* 168 Cal.App.4th 185. There, the court considered whether the usury law prohibits the compounding of interest that occurs when a judgment is renewed pursuant to the Enforcement of Judgments Law. (*Id.* at pp. 195–203.) When a judgment is renewed under the Enforcement of Judgments Law, the renewed judgment is the amount required to satisfy the judgment on the date of renewal, an amount that includes accumulated postjudgment interest. (*Id.* at pp. 191–192; Code Civ. Proc., § 683.150.) Thus, the renewal of the judgment—which can be done every five years (Code Civ. Proc., § 683.110, subd. (b))—effectively allows interest to accrue on interest that has been incorporated into the renewed judgment. In *OCM,* the defendant contended the renewal procedure violated the usury law because compound interest was prohibited under former law that was incorporated into the 1918 initiative measure. (See *OCM, supra,* 168 Cal.App.4th at p. 202.) In rejecting the defendant's claim, the court relied on the language of the 1918 initiative measure and focused on how judgments are treated differently from loans and forbearances. (*Id.* at pp. 202–203.) Specifically, the court observed that, while the 1918 initiative measure specified a presumptive interest rate for judgments, "it omitted judgments from the provisions regulating compound interest, and otherwise imposed no prohibition against compound interest on

17

judgments."[5] (*Id.* at p. 202.) The court saw this omission as meaningful: "The failure to prohibit compound interest on judgments cannot reasonably be regarded as an oversight, as the 1918 [u]sury [initiative] includes judgments with loans and forbearances in setting interest rates." (*Id.* at pp. 202–203.) In this case, too, it is significant that judgments are included in rate-setting provisions but omitted from provisions of the usury law imposing civil liability and prohibiting the receipt of usurious interest.[6]

Although there is no published case law directly on point, the preference plaintiffs and Kahn cite *KWP Fin. I v. Albrecht* (9th Cir. Feb. 19, 1998, No. 96–55143) 139 F.3d 905 [1998 U.S. App. LEXIS 2793] (*KWP*), an unpublished memorandum opinion of the Ninth Circuit Court of Appeals that involves the precise question presented here. In *KWP*, the Ninth Circuit considered whether a judgment creditor's receipt of forbearance fees in exchange for postponing enforcing of the judgment violated California's usury law. (*Id.* at p. *1.) The court agreed with the federal district court's conclusion that "California usury law was inapplicable . . . because [the judgment debtor] and the judgment-creditor entered into a separate and valid contract regarding enforcement of the judgment." (*Id.* at p. *2.) In support of its conclusion, the Ninth Circuit cited our Supreme Court's decision in *Ghirardo, supra,* 8 Cal.4th 791. (*KWP, supra,* at p. *2.)

---

[5] The prohibition against compound interest is contained in section 2 of the 1918 usury initiative, which does not refer to judgments. (Civ. Code, § 1916–2.)

[6] Also relevant is the concurring and dissenting opinion in *Westbrook v. Fairchild* (1992) 7 Cal.App.4th 889, 892, in which the appellate court considered whether a trial court had power to award compound interest on a judgment in situations other than the renewal of a judgment. The dissent noted while section 2 of the 1918 usury initiative clearly prohibits the receipt of any sum greater than the maximum interest rate for a " 'loan or forbearance of money, goods, or things in action,' *no similar proviso applie*[*s*] *to judgments.*" (*Id.* at p. 903, italics added (conc. & dis. opn. of Timlin, J.)) Although Bisno complains that we should not consider a dissenting opinion, the majority in *Westbrook* did not necessarily disagree with the dissent's analysis of the usury law. Instead, the majority simply concluded the history of the usury law was "unhelpful" (*id.* at p. 896) and based its decision primarily on the lack of statutory authorization for compound interest on judgments. (See *id.* at p. 894 [legislative history of statute setting interest on judgments at 10 percent revealed an intent to use simple rather than compound interest].)

Bisno seeks to discount *KWP*, arguing that the "Ninth Circuit's analysis leaves a lot to be desired." We agree that *KWP* does not provide compelling support for its holding. Although we are not precluded from citing unpublished decisions of lower federal courts (see *Bowen v. Ziasun Technologies, Inc.* (2004) 116 Cal.App.4th 777, 787, fn. 6), we assign little persuasive value to such a decision if, as here, the court offered nothing more than a cursory discussion of the legal issue. Nevertheless, the decision is notable because it demonstrates that a federal trial court and appeals court both agreed that California's usury law does not prohibit judgment creditors from receiving forbearance fees. At a minimum, the decision tends to undercut Bisno's contention that the usury law clearly and unambiguously imposes civil liability on judgment creditors who collect forbearance fees.

Bisno also complains that *KWP* improperly relied on *Ghirardo* as the basis for its holding. We agree that *Ghirardo* is not directly on point, but it nonetheless contains helpful guidance. In *Ghirardo*, the Supreme Court held that an agreement restructuring a credit sale was not subject to the usury law. (*Ghirardo, supra,* 8 Cal.4th at p. 808.) The court reasoned that the agreement was "neither a loan nor a forbearance within the meaning of usury law." (*Ibid.*) The court began its analysis by noting that "[t]he constitutional proscription against usury applies by its express terms only to a '. . . loan or forbearance of any money, goods or things in action.' " (*Id.* at p. 801.) The same principle governs our analysis. Without a loan or forbearance that falls within the prohibition against usury, "usury cannot exist." (*Id.* at pp. 801–802.) Because the *KWP* court was presented with a forbearance fee agreement that involved a "judgment" rather than a "loan or forbearance of any money, goods or things in action," the court correctly applied *Ghirardo* in concluding there was no liability for usury.

There is another aspect of *Ghirardo* that is relevant to this case. Discussing the dilemma faced by a debtor that needs additional time and flexibility to avoid foreclosure, the *Ghirardo* court observed that a party subject to foreclosure would be harmed by a rule applying the usury law to an agreement to forestall foreclosure proceedings. (*Ghirardo, supra,* 8 Cal.4th at p. 805.) The court explained that a creditor faced with foreclosing or

19

extending a note would be more likely to foreclose if an extension would violate the usury law. Thus, the imposition of usury limitations would actually harm the borrower the law is intended to protect by encouraging foreclosure. (*Ibid.*) In this case, Bisno was faced with a similar dilemma when, through counsel, he pressed his elderly and infirm judgment creditors to delay enforcing the judgment so that he could complete a real estate transaction. The rule he now advocates would discourage the very relief he sought. A judgment creditor will not agree to delay executing on a judgment if the promise of statutory interest is insufficient inducement to forbear and the receipt of forbearance fees will expose the creditor to liability for usury.

Statutes such as the usury law that provide for treble damages are considered penal in nature. (*G.H.I.I. v. MTS, Inc.* (1983) 147 Cal.App.3d 256, 277; see also *Penziner v. West American Finance Co., supra,* 10 Cal.2d at p. 170 [the right to recover treble damages under the usury law is a penalty upon the lender].) As a general matter, legislation that imposes a penalty for engaging in certain conduct must define the prohibited conduct with a " 'reasonable degree of certainty.' " (*Conrad v. Superior Court* (1962) 209 Cal.App.2d 143, 150.) " '[D]ue process of law is violated by " 'a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.' " (*Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1178.)

The remedial provisions of the usury law do not clearly apply to forbearance fees received by judgment creditors. A person of ordinary intelligence would be left to guess whether statutory liability applies to a judgment creditor who agrees to delay executing on a judgment in exchange for additional remuneration. Under these circumstances, it would arguably be a violation of due process to impose a penalty upon a judgment creditor who receives forbearance fees.

At oral argument on appeal, counsel for Bisno and counsel for Coxeter responded that there is no requirement mandating the imposition of treble damages in a case in which usurious interest is received. That is unquestionably true. The decision to impose treble damages for a violation of the usury law is committed to the sound discretion of the

20

trial court.  (*McClung v. Saito* (1970) 4 Cal.App.3d 143, 152.)  Furthermore, a party challenging a usurious transaction need not pursue a statutory cause of action allowing for treble damages but instead may bring an action for money had and received that seeks to recover usurious interest on the theory that a contract providing for usurious interest is illegal.  (See *Stock v. Meek* (1950) 35 Cal.2d 809, 816–817.)  Indeed, Coxeter has chosen to pursue a common law cause of action instead of a statutory cause of action seeking treble damages.

Nevertheless, our conclusion remains the same despite the fact the usury law does not mandate a treble damages penalty.  Because a court retains the authority to impose treble damages, we still believe it is appropriate to require the usury law to define the prohibited conduct with a reasonable degree of certainty.  Furthermore, even without the imposition of treble damages, the remedy for a violation of the usury law is penal in nature because it requires the liable party to surrender the *entire* amount of interest and not just the incremental amount above the maximum allowable rate.  (*Rochester Capital Leasing Corp. v. K & L Litho Corp.* (1970) 13 Cal.App.3d 697, 703 ["no interest whatsoever can be claimed by the usurious lender"]; see also *Gibbo v. Berger* (2004) 123 Cal.App.4th 396, 403–404.)  Consequently, we will not construe the remedial provisions of the usury law to apply to judgment creditors absent clear and unambiguous language bringing them within the scope of those provisions.

The result is no different if we focus exclusively on the prohibition provisions of the usury law, which provide the basis for a claim that an agreement to pay a usurious rate of interest is void or illegal.  (See Civ. Code, § 1916–2 [agreement for usurious rate of interest is "null and void"].)  Like the remedial provisions of the usury law (Civ. Code, § 1916–3), the prohibition provisions omit mention of the term "judgment" and cannot reasonably be construed to apply to judgment creditors for the reasons we have explained.

Further, the fact the usury law allows the Legislature to set a maximum statutory rate of interest on judgments does not compel a conclusion that a judgment debtor has a legal remedy against a judgment creditor that collects a forbearance fee.  The usury law

21

imposes a limitation on the Legislature's power to set a statutory postjudgment interest rate. It imposes no such limitation on the power of private parties to receive forbearance fees in addition to the statutory rate.

The approach taken by federal courts to postjudgment interest is instructive. Just as California's usury law establishes an interest rate that is automatically applied to judgments, federal law likewise "uses mandatory language" in requiring postjudgment interest at a specified rate in section 1961 of title 28 of the United States Code (hereafter "§ 1961"). (*Jack Henry & Associates, Inc. v. BSC, Inc.* (E.D. Ky. 2010) 753 F.Supp.2d 665, 667.) Yet, every federal circuit court that has addressed the issue has agreed that "parties may contract around § 1961, and agree to a different postjudgment rate." (*Id.* at p. 667–668.) This is so because "[n]othing in § 1961 indicates that Congress sought to limit freedom of contract with respect to postjudgment interest" and "[t]he text of § 1961 does not expressly limit parties' ability to agree to a different postjudgment interest rate." (*Id.* at p. 668.) One court explained that "[j]udgment interest is purely a statutory construct" that applies under § 1961 without the need for a demand by the prevailing party or an order of the court. (*BP Products North America, Inc. v. Youseff* (M.D. Fla. 2004) 296 F.Supp.2d 1351, 1355.) Whereas a court has no discretion to *impose* a rate other than the one provided in § 1961, the statute does not preclude parties from *agreeing* to a different interest rate. (*In re Connaught Properties* (1995) 176 B.R. 678, 684.)

Federal law governing postjudgment interest is not a perfect analog of the usury law.[7] Nevertheless, it supports the view that there is nothing inconsistent in requiring

---

[7]Among other things, we do not suggest that California law permits a court to apply an interest rate to a judgment other than the rate allowed by the usury law, even if the parties otherwise agree on the rate to be applied in satisfaction of the judgment. (See *John Siebel Associates v. Keele* (1986) 188 Cal.App.3d 560, 565 [court applied maximum rate of 10 percent to stipulated judgment even though stipulation allowed for interest at rate of 15 percent]; see also *Spring Street Co. v. Department of General Services, supra,* 178 Cal.App.4th at p. 1018 [portion of judgment awarding postjudgment interest above allowable rate was void].) As we explain, *post,* in this case we are solely concerned with a forbearance fee that is separate from any statutory postjudgment interest recoverable under the Enforcement of Judgments Law.

22

courts to impose a specified rate of interest on judgments, on the one hand, and allowing private parties to separately enter into forbearance agreements, on the other hand. The establishment of a statutory rate automatically applied to judgments does not, by implication, prohibit parties from entering into separate agreements to forbear collecting a judgment.

In light of the statutory underpinnings of usury liability, we cannot extend liability beyond the express terms of the statute. Accordingly, we hold that the usury law does not prohibit a judgment creditor from receiving forbearance fees in addition to statutory postjudgment interest.

**4.** ***Enforcement of Judgments Law***

Bisno next contends forbearance fees are not authorized by the Enforcement of Judgments Law (Code Civ. Proc., § 680.010 et seq.). We agree that the Enforcement of Judgments Law does not allow a judgment creditor to recover forbearance fees in satisfaction of a judgment. However, as we explain, it does not follow that forbearance fees are unlawful or give rise to civil liability under the usury law.

The Enforcement of Judgments Law is a comprehensive statutory scheme governing the enforcement of all civil judgments in California. (*Imperial Bank v. Pim Electric, Inc.* (1995) 33 Cal.App.4th 540, 546.) Under Code of Civil Procedure section 685.040, a judgment creditor is authorized to recover "the reasonable and necessary costs of enforcing a judgment." Among the costs that may be recovered are costs and interest associated with a writ issued to enforce the judgment, statutory fees and costs authorized as costs of collection, and the cost of serving a writ of execution. (Code Civ. Proc., § § 685.050, 685.070, 685.095.) A forbearance fee is not a recoverable cost under the Enforcement of Judgments Law.

Code of Civil Procedure section 695.210 specifies what is required to satisfy a judgment. Under that section, the amount required to satisfy a judgment is composed of "(1) the amount of the judgment as entered, (2) plus costs pursuant to Code of Civil Procedure section 685.090, (3) plus postjudgment interest pursuant to Code of Civil Procedure sections 685.010 through 685.030, (4) minus any amounts already paid or no

23

longer enforceable." (*S&S Cummins Corp. v. West Bay Builders, Inc.* (2008) 159 Cal.App.4th 765, 782.) A forbearance fee is not included as one of the listed items that is either added to or subtracted from the judgment. The preference plaintiffs concede that the Enforcement of Judgments Law does not authorize forbearance fees.

Although the Enforcement of Judgments Law contains no express authorization for forbearance fees, Bisno can point to no provision of the statutory scheme that prohibits or proscribes such fees. More to the point, Bisno cites nothing in the Enforcement of Judgments Law that declares forbearance fees usurious or renders them subject to civil liability under section 1916–3 of the Civil Code. Indeed, there is nothing in the Enforcement of Judgments law that in any way prohibits parties from entering into private agreements to forbear collection of a judgment.

Further, Bisno's reliance on the Enforcement of Judgments Law proves too much. Under the approach advocated by Bisno, an agreement to forbear collecting a judgment for *any* amount of money would run afoul of the Enforcement of Judgments Law, because that amount would necessarily be in addition to the maximum rate of postjudgment interest allowed under the statutory scheme as well as the constitutional usury provisions. Consequently, a judgment creditor that waives the right to immediate enforcement of the judgment in exchange for a nominal forbearance fee would be liable for usury and therefore subject to treble damages and other penalties under the usury law.

Bisno dismisses the claim that a nominal forbearance fee would be usurious and suggests there would be no incentive for a judgment debtor to pursue a usury claim in such a case. However, as the Supreme Court noted in *Ghirardo, supra,* 8 Cal.4th at page 807, "[w]hether a transaction violates the usury law does not depend on the margin by which the maximum rate is exceeded. There is no such thing as a little usury." Further, Bisno is mistaken in assuming that any usury claim would be limited to the nominal amount of the forbearance fee. Under Bisno's theory, the forbearance fee is usurious because, taken together with statutory postjudgment interest, it exceeds the maximum rate of 10 percent allowable under the constitutional usury provisions. As noted above, the measure of damages in a usury action is the *entire* amount of interest

24

paid, not just the incremental amount by which the interest exceeded the allowable rate. (See *Gibbo v. Berger, supra,* 123 Cal.App.4th at pp. 403–404.) Thus, under Bisno's approach, a judgment debtor would be allowed to recover not just the forbearance fee but also the entire amount of statutory postjudgment interest awarded, because the measure of damages is the total amount of interest received. In addition, a court would have discretion to award treble damages. (*Id.* at p. 404.) This outcome makes little sense and would punish a judgment debtor who agrees to delay executing on a judgment in exchange for a nominal sum.

The import of the Enforcement of Judgments Law is that a forbearance fee is not recoverable under that statutory scheme. This result is not surprising. The statutory scheme provides a summary procedure to enforce a judgment. The items recoverable under the scheme are either statutorily authorized costs or costs that a judgment creditor is legally entitled to recover, with only the amount to be determined by the court. By contrast, a forbearance fee is the subject of a separate agreement among the parties and is not automatically enforceable under the Enforcement of Judgments Law. Indeed, it would make little sense to allow a judgment creditor to recover a forbearance fee within the framework of the Enforcement of Judgments Law. Unlike a cost that is statutorily authorized and is not subject to dispute except for the amount, a forbearance fee is the subject of a separate agreement that may be in dispute. A judgment debtor may dispute not just the amount of the fee but also the validity of the forbearance agreement itself. The summary procedure provided for in the Enforcement of Judgments Law is not designed to adjudicate contract disputes that are collateral to the judgment that is the subject of the enforcement proceedings.

Therefore, although we conclude that the Enforcement of Judgments Law does not prohibit forbearance fees, we do not suggest that such fees may be awarded under that statutory scheme. Forbearance fees are not properly added to the judgment or treated as interest that may be awarded under the Enforcement of Judgments Law. Instead, a forbearance agreement is a contract that must be enforced in a separate proceeding between the parties. (Cf. *BP Products North America, Inc. v. Youseff, supra,* 296

25

F.Supp.2d at p. 1355 [unlike statutory postjudgment interest that is awarded as a matter of right, any separate contractual agreement governing interest must be enforced by a lawsuit].)

**5.** *Remaining Claims and Public Policy Considerations*

Because we conclude that the forbearance fees received by the preference plaintiffs were not usurious, it is unnecessary to address Bisno's claim that the preference plaintiffs' attorney, Kahn, is liable for usury as an assignee of the preference plaintiffs. Likewise, we need not consider Coxeter's assertion that the purportedly usurious forbearance fees should be applied to the judgments and thereby relieve him of any obligation to satisfy the judgments.

In recognition of the fact that he is not a particularly sympathetic plaintiff, Bisno urges the court not to make "bad law" based upon the "bad facts" of this case. To be clear, our analysis turns on the language of the usury law and not on any desire to punish Bisno or reward the preference plaintiffs. Even if we were inclined to believe as a matter of public policy that usury law should prohibit judgment creditors from receiving forbearance fees, it is not our role to rewrite the usury law to achieve that result. The issue is best left to the voters who have the power to amend the usury law if, as Bisno contends, there are compelling public policy reasons to extend usury liability to judgment creditors.

As a final matter, we offer a response to Bisno's suggestion that excluding judgment forbearance fees from the scope of the usury law will encourage rampant abuse by collection agents and lawyers intent on extorting additional payments from desperate judgment debtors. Based on the dearth of case law addressing such abuses in the nearly 100 years since the usury law has been in effect, the problem of judgment creditors assessing usurious forbearance fees does not appear to be a widespread problem.

In any event, as noted above, a forbearance agreement is a separate contract that must be enforced in a separate proceeding. A judgment creditor is unlikely to delay enforcing a judgment in exchange for a forbearance fee if there is a concern that the judgment debtor will challenge the forbearance agreement in court and mire the parties in

26

further litigation.  Because a forbearance agreement is a contract subject to all standard contract defenses, including duress and unconscionability, it is simply not the case that a judgment creditor can "extort" unconscionable fees from a desperate judgment debtor.  A forbearance agreement that is procedurally and substantively unconscionable is unenforceable.  (See *Carboni v. Arrospide* (1991) 2 Cal.App.4th 76, 83–86 [agreement to borrow money at very high rate of interest while borrower was attempting to pay his parents' medical expenses was unconscionable]; see also *Rich & Whillock, Inc. v. Ashton Development, Inc.* (1984) 157 Cal.App.3d 1154, 1158–1159 [bad faith threat to withhold payment may constitute wrongful act for purposes of economic duress doctrine].)

## DISPOSITION

The judgments are affirmed.  Respondents shall be entitled to recover their costs on appeal.

27

_____
McGuiness, P.J.

We concur:


_____
Pollak, J.


_____
Siggins, J.

A133537; A134008

Robert H. Bisno v. Robert J. Kahn (A133537 [Consolidated]
James C. Coxeter v. Robert J. Kahn et al. (A134008)


Trial court:            Alameda County


Trial Judge:            Hon. Ronnie B. Maclaren


Attorneys:

Attorney for Plaintiff and Appellant, Robert H. Bisno:

Berger Kahn, A Law Corporation
David B. Ezra,; Mark F. Marnell


Attorney for Plaintiff and Appellant, James C. Coxter:

Jackson DeMarco Tidus & Peckenpaugh
Lawrence R. Resnick, Gregory P. Regier, Yael Tobi


Attorney for Defendants and Respondents, Robert J. Kahn et al:

Law Offices of Robert Kahn
Robert J. Kahn

Ferguson & Berland P.C.
William S. Berland